**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| SAGE FULFILLMENT, LLC, | Civil Action No. 3:20-cv-00444 |
| Plaintiff, | |
| v. | |
| EARTH ANIMAL VENTURES, INC. and EARTH ANIMAL VENTURES, LLC, | **JURY TRIAL DEMANDED** |
| Defendants. | APRIL 1, 2020 |

**COMPLAINT**

Plaintiff Sage Fulfillment, LLC ("Sage") files this Complaint against Defendants Earth Animal Ventures, Inc. ("EAV, Inc.") and Earth Animal Ventures, LLC ("EAV, LLC") (collectively EAV, Inc. and EAV, LLC are referred to in this Complaint as "EAV") and alleges as follows:

**THE PARTIES**

1. Plaintiff Sage is a limited liability company with a principal place of business located at 2905 4th Avenue S, Seattle, WA 98134.

2. There is one member of Sage, a limited liability company named Sage Door Holdings, LLC. There are two members of Sage Door Holdings, LLC: Richard Calafiore and John Thornton.

3. Defendant Earth Animal Ventures, Inc. is a Delaware corporation with a principal place of business located at 49 John Street, Southport, CT 06890.

4. Defendant Earth Animal Ventures, LLC is a limited liability company with a principal place of business located at 49 John Street, Southport, CT 06890.

105268996

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. § 1332.

6. There is complete diversity between the parties.

7. Richard Calafiore and John Thornton, the sole members of Sage Door Holdings, LLC, which is the sole member of Sage, are citizens of the State of Washington.

8. EAV, Inc. is a citizen of Delaware and Connecticut.

9. Upon information and belief, none of the members of EAV, LLC are citizens of the State of Washington.

10. The amount in controversy exceeds $75,000.

11. This Court has personal jurisdiction over EAV because its principal place of business is located in the State of Connecticut.

12. Venue is proper in this District, because the Court has personal jurisdiction over EAV, and EAV's principal place of business is located in this District.

13. The Parties have contractually agreed that venue is appropriate wherever any defendant has a principal place of business.

## FACTS

14. Sage is a manufacturer and wholesale distributor of certain products, including cannabinoid ("CBD") oil.

15. EAV is engaged in the business of wholesale marketing, selling and distributing various products for use on animals.

16. In or around April 2018 and before the formation of Sage, EAV engaged Sage's principals, Richard Calafiore and John Thornton, to become EAV's exclusive supplier of certain

specialty CBD-based products that include a proprietary ingredient called "Uptake" for use on animals ("CBD Animal Products").

17. EAV required, as a condition of Sage supplying CBD Animal Products to EAV and subject to certain other terms, that Sage agree that EAV would be Sage's exclusive customer for CBD Animal Products.

18. On or about September 10, 2018, Sage was formed for the specific purpose of becoming EAV's exclusive supplier of CBD Animal Products.

19. The parties entered into an agreement concerning Sage's provision of CBD Animal Products to EAV, memorialized in the Master Exclusive Supply Agreement ("MESA") effective November 13, 2018.

20. The MESA is effective through December 31, 2021, unless properly terminated or extended as expressly provided for in the MESA.

21. The MESA provides that Sage shall exclusively manufacture and deliver CBD Animal Products to EAV, and EAV shall exclusively purchase CBD Animal Products from Sage.

22. On or about December 6, 2018, the parties executed Statement of Work No. 1 ("SOW1"), effective January 1, 2019. Hereinafter, the MESA and SOW1 are collectively referred to as the "Agreements."

23. SOW1 is effective January 1, 2019 through and including December 31, 2021 (the "SOW1 Term"), unless the Agreements are properly terminated as expressly provided for in the MESA.

24. Under SOW1, Sage agreed to supply a product described as a "metered applicator for an over the counter packaged proprietary strain with certificate of Analysis full spectrum cannabinoid oil transdermal gel with 'Uptake' delivery" (the "Product" or "Products").

25. EAV markets the Product as the "Zen-Pen." As offered on EAV's website, the Zen-Pen appears as follows:



26. SOW1 provides that EAV shall exclusively purchase all Products from Sage, and that Sage shall supply the Products exclusively to EAV, provided EAV meets certain minimum Product Order commitments, set forth in Section 2 of SOW1.

27. The Products are specially manufactured by Sage for EAV.

28. The Products consist of two key components: (1) the syringe-like device or pen (the "Pen") and (2) the cannabinoid oil transdermal gel with "Uptake" ("CBD Gel").

29. Before Sage began supplying the Products, EAV tested and approved the Products, including the CBD Gel and the Pen separately and together.

30. Beginning in or about May 2018, Sage provided multiple formulas of CBD Gel for EAV to test, and EAV expressly approved the formula for the CBD Gel that Sage put into production for EAV.

31. Sage also provided EAV multiple options for EAV to consider and test as metered applicators of the CBD Gel.

32. EAV selected one of the metered applicator options that Sage had provided to EAV and chose a formula of CBD Gel for use in such metered applicator; EAV later decided against using that applicator.

33. Subsequently, EAV expressly identified the specifications and components for the Pen, which ultimately became the final Pen.

34. Sage located a medical device manufacturer that agreed to manufacture the Pen to EAV's specifications.

35. EAV tested and expressly approved the Pen manufactured by the medical device manufacturer that Sage located. EAV also tested and expressly approved a formula of the CBD Gel to use with the Pen.

36. In providing the Products to EAV under the Agreements, Sage used the Pen and formula of CBD Gel that EAV selected.

37. Pursuant to SOW1, Sage agreed to supply the Products in two different size units: a small unit that administers 2 mg doses, and a large unit that administers 10 mg doses.

38. Pursuant to Section 2 of SOW1, EAV agreed to order a minimum of 400,000 units of the Products annually beginning January 1, 2019, through December 31, 2021, for a total minimum of 1,200,000 units of Products for the entire SOW1 Term. Without affecting the annual minimum requirement, EAV also agreed to purchase a minimum of 40,000 units of the

Products each calendar quarter of the SOW1 Term beginning January 1, 2019 (these annual and quarterly commitments are referred to collectively as the "Minimum Purchase Requirements"). The Minimum Purchase Requirements apply during the entire term of SOW1.

39. The Minimum Purchase Requirements are essential terms of the Agreements.

40. Sage would not have entered into the Agreements without EAV's agreeing to the Minimum Purchase Requirements.

41. In reliance on EAV's promise to fulfill the Minimum Purchase Requirements, Sage has invested substantial capital to develop capacity to manufacture CBD Gel and other CBD Animal Products exclusively for EAV.

42. Sage depends on the revenue expected from EAV's Minimum Purchase Requirements to meet its financial obligations.

43. Under the Agreements, EAV is required to purchase 400,000 units of the Products each year through December 31, 2021, which would yield revenues of approximately $5,950,000 each year in 2019, 2020, and 2021.

44. In 2019, EAV submitted purchase orders to Sage for only 75,000 units of the Products, which yielded revenues of only $1,115,625.

45. EAV ordered all 75,000 units of the Products before July 1, 2019.  EAV has not ordered any units of the Products since the second calendar quarter of 2019.

46. By letter dated November 16, 2019, Sage notified EAV that its failure to meet its Minimum Purchase Requirements in the first three quarters of 2019, as well as EAV's statements that it would not meet the Minimum Purchase Requirements during the remainder of the SOW1 Term, were material breaches of the Agreements by EAV.

47. Rather than cure its material breaches, EAV retaliated by sending a letter to Sage dated December 6, 2019, falsely and in bad faith accusing Sage of various alleged breaches of the Agreements.

48. To the extent, if any, that Sage was in breach of any provisions of the Agreements, Sage cured any and all breaches on or before January 8, 2020.

49. By letter dated March 11, 2020, EAV purported to give "notice that Earth Animal Ventures, Inc. is terminating the Master Exclusive Supply Agreement." EAV further stated in this letter that "any further dealings between the parties will occur under a different arrangement."

50. EAV's purported termination of the MESA is improper and ineffectual: EAV has no right to terminate the MESA under its terms. Through this wrongful act EAV has repudiated the Agreements.

51. EAV's purported termination of the MESA is an anticipatory repudiation of the Agreements.

52. The MESA specifies certain circumstances under which either party may terminate the MESA.

53. None of the circumstances that could allow EAV to terminate the Agreements has arisen.

54. EAV's failures to meet its contractual obligations have left Sage with an excess supply of empty, specially manufactured Pens and idle capacity to manufacture CBD Animal Products.

55. Given the exclusivity terms of the Agreements, which Sage has honored, and the specialized Pen and CBD Gel that EAV specified and approved, Sage has no alternative buyer for the Products, Pen components, or CBD Gel.

56. Sage has performed all of its obligations under the Agreements.

## COUNT I

### (Breach of Contract – Minimum Purchase Requirements)

57. Sage hereby repeats and re-alleges paragraphs 1 through 56 of this Complaint as if fully set forth herein.

58. EAV failed to meet the Minimum Purchase Requirements in calendar quarters 2, 3, and 4 of 2019, and in calendar quarter 1 of 2020.

59. EAV failed to meet the annual Minimum Purchase Requirement in calendar year 2019.

60. EAV has expressly and unequivocally advised Sage that EAV has no intention of meeting the Minimum Purchase Requirements through the duration of the Agreements.

61. By failing to meet the Minimum Purchase Requirements, EAV is in material breach of the Agreements.

62. As a direct and proximate result of the actions of EAV alleged above, Sage has been damaged.

## COUNT II

### (Declaratory Judgment – Improper Termination)

63. Sage hereby repeats and re-alleges paragraphs 1 through 62 of this Complaint as if fully set forth herein.

64. By letter dated March 3, 2020, EAV purported to give "notice that Earth Animal Ventures, Inc. is terminating the Master Exclusive Supply Agreement." EAV further stated "any further dealings between the parties will occur under a different arrangement."

65. EAV's purported termination is improper and ineffective under the terms of the Agreements.

66. EAV's failure to purchase the minimum quantities of the Products required by the terms of the Agreements is improper.

67. An actual, ripe, and justiciable controversy exists between Sage and EAV regarding the parties' respective rights and obligations under the Agreements as to whether EAV properly terminated the Agreements and as to EAV's continuing obligations to perform under the Agreements.

68. Sage seeks the following declaration from the Court with respect to the facts and circumstances set forth herein: "EAV's purported termination of the Agreements is improper and ineffective under the terms of the Agreements; EAV remains bound to fulfill its obligations under the Agreements until they expire."

## COUNT III

### (Anticipatory Repudiation)

69. Sage hereby repeats and re-alleges paragraphs 1 through 68 of this Complaint as if fully set forth herein.

70. In its letter dated March 11, 2020, EAV expressed its refusal to perform its obligations under the Agreements positively, unconditionally, unequivocally, distinctly and absolutely.

71. EAV's actions constitute an anticipatory repudiation of the Agreements.

72. EAV's anticipatory repudiation has substantially impaired the value of the Agreements.

73. As a direct and proximate result of the actions of EAV alleged above, Sage has incurred additional damages in the form of lost future revenues and profits, among other things.

## COUNT IV

### (Violation of the Connecticut Unfair Trade Practices Act)

74. Sage hereby repeats and re-alleges paragraphs 1 through 73 of this Complaint as if fully set forth herein.

75. EAV promised to fulfill the Minimum Purchase Requirements to induce Sage to enter into the Agreements.

76. EAV understood and appreciated Sage's reliance on EAV's fulfillment of the contract as integral to the viability and success of Sage's relatively new business.

77. EAV understood and appreciated that Sage had invested substantial capital, resources, and goodwill into being EAV's exclusive supplier of CBD Animal Products.

78. Despite its contractual obligations, EAV has purposefully failed to meet the Minimum Purchase Requirements out of EAV's own convenience and self-interest.

79. EAV further understood that, by willfully disregarding its contractual obligations to meet the Minimum Purchase Requirements, it was and is starving Sage of the capital needed to continue as a going-concern.

80. Instead of honoring its contractual commitments, EAV has attempted to leverage its own breaches, and their financial consequences on Sage, in an effort to coerce Sage to accept a different arrangement, one more favorable to EAV.

81. For example, in its letter of March 10, 2020, after wrongfully declaring the Agreements are terminated, EAV unilaterally declared: "Please understand that any further dealings between the parties will occur under a different arrangement."

82. Through the acts alleged above, EAV has willfully and maliciously engaged in conduct offensive to public policy, common law principles, and established concepts of fairness.

83. Through the acts alleged above, EAV has acted in bad faith.

84. EAV's conduct was and is immoral, unethical, oppressive, and unscrupulous.

85. EAV's conduct has caused and will continue to cause substantial injuries and damages to Sage.

86. EAV committed these acts in the conduct of trade or commerce.

87. Sage has suffered and will continue to suffer an ascertainable loss of money and/or property as a result of EAV's actions.

88. By virtue of the conduct above, Defendants have engaged in unfair or deceptive acts or practices in the conduct of trade or commerce in violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, *et seq*.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Sage requests judgment in its favor and against Sage as follows:

1. A judgment that EAV has materially breached the Agreements;

2. A judgment declaring EAV's purported termination of the Agreements is improper and ineffective under the terms of the Agreements; EAV remains bound by the Agreements until they expire.

3. For losses incurred under the Agreements, an award of compensatory and all other damages available under the Agreements and at law, including lost profits;

4. For EAV's violations of the Connecticut Unfair Trade Practices Act, an award of actual damages;

5. An award of pre- and post-judgment interest;

6. An award of costs and reasonable attorneys' fees under the Agreements;

7. An award of costs and reasonable attorneys' fees under the Connecticut Unfair Trade Practices Act;

8. An award of punitive damages under the Connecticut Unfair Trade Practices Act; and

9. Such other and further relief as the Court deems appropriate and equitable.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Sage demands trial by jury in this action of all issues triable by jury in this matter.

Dated: April 1, 2020

Respectfully submitted,

/s/ Daniel L. FitzMaurice
Daniel L. FitzMaurice (ct05331)
Day Pitney LLP
242 Trumbull Street
Hartford, CT 06103-1212
Phone (860) 275-0100
Fax (860) 275-0343
dlfitzmaurice@daypitney.com
*Attorney for Plaintiff*

SAGE FULFILLMENT, LLC
