## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| SAGE FULFILLMENT, LLC | : | |
|---|---|---|
| | : | |
| Plaintiff, | : | CASE NO. 3:20-CV-00444-VAB |
| | : | |
| V. | : | |
| | : | |
| EARTH ANIMAL VENTURES, INC., and | : | |
| EARTH ANIMAL VENTURES, LLC, | : | |
| | : | |
| Defendants. | : | MAY 15, 2020 |

## DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS COUNTS II, III, AND IV OF PLAINTIFF'S COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

# TABLE OF CONTENTS

**Page**

I.      FACTUAL BACKGROUND ............................................................................................. 2

II.     PROCEDURAL HISTORY ............................................................................................. 7

III.    LEGAL STANDARD ...................................................................................................... 8

IV.     ARGUMENT .................................................................................................................... 9

    A.     Count II Should Be Dismissed Because Declaratory Relief is
            Inappropriate Where the Issues Will Be Addressed Through the
            Resolution of Count I .............................................................................................. 10

    B.     Count III Should Be Dismissed As It is Duplicative of Count I and Sage's
            Claim for Additional Damages is Barred By the Limitation of Damages
            Provision in the MESA ........................................................................................... 13

            1.     Count III is Entirely Duplicative of Count I, Which Already Seeks
                    Breach of Contract Damages For Present and Future Harm .................... 13

            2.     The Relief Sought Under Count III is Precluded By the Limitation
                    of Damages Provision in the Agreement Which Limits Recovery to
                    Actual Breach of Contract Damages Under the Oregon Uniform
                    Commercial Code ..................................................................................... 16

    C.     Count IV (CUTPA) Should Be Dismissed as Sage Merely Alleges an
            Intentional Breach of Contract, Which is Insufficient to Establish a
            Violation under CUPTA ......................................................................................... 20

VI.     CONCLUSION ............................................................................................................... 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ainsworth v. Amica Mutual Ins. Co.*,
2018 WL 4425991 (D. Conn. Sept. 17, 2018)........................................................................11

*Arch Ins. Co. v. Centerplan Constr. Co., LLC*,
2018 WL 6519063 (D. Conn. Dec. 11, 2018).........................................................................15

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..................................................................................................................8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..................................................................................................................8

*Boulevard Assocs. v. Sovereign Hotels, Inc.*,
72 F.3d 1029 (2d Cir. 1995)...............................................................................................21, 22

*Brass v. Am. Film Techs., Inc.*,
987 F.2d 142 (2d Cir.1993)........................................................................................................9

*Cadco, Ltd. v. Doctor's Assocs., Inc.*,
188 Conn. App. 122 (2019) .....................................................................................................20

*Cortec Indus., Inc. v. Sum Holding L.P.*,
949 F.2d 42 (2d Cir.1991)..........................................................................................................9

*Dibble v. Hodes Co.*,
132 Or. 596 (1930)...................................................................................................................15

*Dow Jones & Co., Inc. v. Harrods Ltd.*,
346 F.3d 357 (2d Cir. 2003).................................................................................................10, 11

*Fort v. Am. Fed'n Of State, Cty. And Mun. Emps.*,
375 F. App'x. 109 (2d. Cir. Apr. 29, 2010) .............................................................................10

*Goldmark, Inc. v. Catlin Syndicate Ltd.*,
2010 WL 5872337 (E.D.N.Y. Nov. 22, 2010)........................................................................11

*Gross v. Rell*,
695 F.3d 211 (2d Cir. 2012).......................................................................................................8

*Hawkeye, LLC v. Zurich Am. Ins. Co.*,
2011 WL 1216408 (D. Conn. Mar. 29, 2011) ..........................................................................9

ii

*Hayden v. Paterson*,
594 F.3d 150 (2d Cir. 2010)..........................................................................................9

*Hilb Rogal & Hobbs Co. v. MacGinnitie*,
2005 WL 441509 (D. Conn. Feb. 14, 2005) .................................................................14

*Holcombe v. Ingredients Sols., Inc.*,
2019 WL 1383432 (D. Conn. Mar. 27, 2019), aff'd and remanded, 797 F.
App'x 630 (2d Cir. 2020)..............................................................................................15

*Intellectual Capital Partner v. Institutional Credit Partners LLC*,
2009 WL 1974392 (S.D.N.Y. July 8, 2009) ...............................................................11

*J. Lilly, LLC v. Clearspan Fabric Structures Int'l, Inc.*,
2020 WL 1855190 (D. Or. Apr. 13, 2020) ..................................................................18

*Jitner v. Gersch Dev. Co.*,
101 Or. App. 220 (1990)...............................................................................................14

*Kim v. State Farm Fire & Cas. Co.*,
2015 U.S. Dist. LEXIS 147823 (D. Conn. Oct. 30, 2015) ............................................8

*Martino v. Seterus, Inc.*,
2018 WL 3553406 (D. Conn. July 23, 2018) ...............................................................21

*MedPricer.com, Inc. v. Becton Dickinson & Co.*,
2014 WL 3700992 (D. Conn. July 25, 2014) ...............................................................21

*Roy v. Law Offices of B. Alan Seidler, P.C.*,
284 F. Supp. 3d 454 (S.D.N.Y. 2018)...........................................................................15

*Sofi Classic S.A. de C.V. v. Hurowitz*,
444 F. Supp. 2d 231 (S.D.N.Y.2006).............................................................................11

*The Pet Stop Prof'l Pet Sitting Serv., LLC v. The Prof'l Pet-Sitting Serv. Inc*,
2008 WL 2185339 (D. Ore. May 1, 2008) ...................................................................14

*Ulbrich v. Groth*,
310 Conn. 375 (2013) ...................................................................................................21

*Wilson v. W. All. Corp.*,
78 Or. App. 197 (1986).................................................................................................15

**Statutes**

28 U.S.C. § 2201..............................................................................................................10

Conn. Gen. Stat. § 42-110b..............................................................................................20

O.R.S. § 72.7080 ................................................................................................................... 17

O.R.S. § 72.7100 ................................................................................................................... 17

O.R.S. 72.7150 ...................................................................................................................... 17

O.R.S. 72.7190 ...................................................................................................................... 18

Defendant, Earth Animal Ventures, Inc. ("EAV" or "Defendant") respectfully submits this memorandum of law in support of its Motion to Dismiss Counts II, III, and IV of the Complaint (the "Motion to Dismiss") filed by Plaintiff, Sage Fulfillment, LLC ("Sage" or "Plaintiff").[1] While EAV largely disputes the factual allegations in the Complaint, even if Sage could prove these allegations, the only potentially viable cause of action would be for breach of contract under Count I.

Rather than rely upon Count I as the sole source of recovery, Plaintiff has sought to expand the scope of this lawsuit to include three additional claims, none of which can withstand scrutiny under Federal Rule of Civil Procedure 12(b)(6). Under Count II, Sage seeks a declaration that the underlying contract remains valid and enforceable, but that issue will necessarily be resolved under Count I. Federal law prohibits declaratory relief, such as requested in Count II, on issues that will be addressed in other counts. Under Count III, Sage seeks special damages, including lost revenue and profits, under a theory of anticipatory repudiation, but this claim is duplicative of Count I. Moreover, the governing contract expressly precludes either party from recovering any special, consequential, or punitive damages in this case, including lost profits or revenue. Finally, under Count IV, Sage seeks damages for violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), but it is well-established that a mere breach of contract is insufficient to establish a CUTPA claim and Plaintiff has failed to allege any aggravating circumstances surrounding the breach. Accordingly, Counts II, III, and IV should be dismissed for failure to state a valid claim upon which relief may be granted.

---

[1]    Sage originally named Earth Animal Ventures, Inc. and Earth Animal Ventures, LLC as defendants in this action, but later moved to dismiss Earth Animal Ventures, LLC from the case. *See* Pl. Mot. to Dismiss (Doc. Entry No. 9).

## I.  FACTUAL BACKGROUND

EAV is a Connecticut-based company.[2]  It markets and sells a variety of pet foods, treats, holistic remedies, and other pet supplements to distributors and retail customers.  EAV's products are considered a premium brand, using only the highest quality ingredients, processes and packaging.  In 2018, EAV began efforts to expand its product line of holistic and alternative pet medicines to include cannabinoid ("CBD") oil products that could be used to treat a variety of pet health conditions.  Sage's principals were in the business of distributing CBD oil products.  Sage was identified by EAV as a potential business collaborator.

In 2018, EAV began discussions with Sage's principals regarding an exclusivity agreement, whereby Sage would produce and distribute to EAV certain specialty CBD-oil products for use with animals, which EAV would distribute and sell to retail and distributor customers. Compl., ¶ 16.  On December 7, 2018, the parties entered into a certain Master Exclusive Supply Agreement (the "MESA").  A true and accurate copy of the MESA is attached Exhibit A to the Affidavit of Stewart Shanley ("Shanley Aff.").  The MESA sets forth the basic terms and obligations between the parties.  It provides that Sage shall exclusively manufacture and deliver certain CBD oil products to EAV and EAV shall exclusively purchase the CBD oil products from Sage.  Ex. A; Compl., ¶ 21.

Sage claims that shortly after executing the MESA, the parties executed Statement of Work No. 1 (the "SOW" and together with the MESA, collectively the "Agreement").  A true and

---

[2]      EAV provides the Court with additional factual background beyond the allegations in the Complaint and the operative documents.  It does so for context only. The additional factual background is not intended to raise issues outside of the pleadings or to convert the Motion to Dismiss into a motion for summary judgment.  Indeed, the Motion to Dismiss is based solely on the sufficiency of Sage's allegations in the Complaint and the operative Master Exclusive Supply Agreement, which is referenced extensively in the Complaint.

accurate copy of the final draft version of the SOW is attached as <u>Exhibit B</u> to the Shanley Aff.[3] The draft version of the SOW incorporated all of the terms in the MESA. *See* Ex. B. It was to be effective from January 1, 2019 through December 31, 2021. *Id.* It also specifically set forth Sage's obligations to provide EAV with a certain "metered applicator for an over-the-counter packaged proprietary strain with certificate of Analysis full spectrum cannabinoid oil transdermal gel with 'Uptake' delivery" (the "CBD Animal Products"). Ex. B.; Compl., ¶ 24. The CBD Animal Products included a dose of CBD oil transdermal gel and an applicator pen. *Id.*, ¶ 28 EAV marketed and sold the CBD Animal Products under the EAV brand and with the product name of the "Zen-Pen." *Id.*, ¶ 25. The Zen-Pen was sold by EAV in two different size units: a smaller unit that administered 30 2 mg doses (retailing for approximately $50); and a larger unit that administers 30 10 mg doses (retailing for approximately $80). *Id.*, ¶ 37. The SOW stated that EAV was to purchase a certain minimum amount of the CBD Animal Products from Sage both annually and each calendar quarter (the "Minimum Purchase Requirements"). Compl., ¶ 26; SOW (Ex. B) ¶ 2.

While EAV entered 2019 believing in good faith that its relationship with Sage would be successful, it quickly encountered a number of serious issues with both Sage and the CBD Animal Products. EAV's good faith was evidenced, in part, by the fact that at the outset of the relationship, EAV provided Sage with an advance or loan of $250,000 that was intended to assist Sage "in building the capacity necessary to comply" with the SOW. *See* SOW (Ex. B) ¶ 4. EAV was led to believe that the money was required to secure CBD biomass needed to produce the CBD Animal Products. The SOW provided that Sage would pay the advance back through credits against

---

[3]     EAV is not currently in possession with a fully executed version of the SOW and is not presently aware if a fully enforceable version of the SOW exists. Exhibit B to the Shanley Affidavit is the final draft version that was signed by Sage and is provided for context only. EAV does not rely upon any provisions of the SOW in moving for dismissal of Counts II, III, and IV of Sage's Complaint.

EAV's purchase of products beginning in May 2019 and provide a further credit in the amount of $62,500. *See* Ex. B. Sage did not apply these credits to EAV's purchases. In fact, EAV later learned that Sage had used the money for general business expenses, rather than on raw materials and other expenses related to the manufacturing of CBD Animal Products for EAV.

Additionally, there were significant delays in the delivery by Sage of the CBD Animal Products in early 2019. Specifically, Sage was unable deliver at least 85% of the 10 mg Zen-Pen Products ordered by EAV during the first six months of 2019. Under Paragraph 13.2(e) of the MESA, the failure to deliver at least 85% of Products in any six-month period is a basis for EAV to "immediately terminate this Agreement." *See* MESA (Ex. A).

EAV also discovered that the CBD Animal Products themselves were riddled with material performance and quality issues. For instance, Sage provided various CBD Animal Products that contained commercially unviable sell-by dates. The sell-by dates were insufficiently short such that EAV could not distribute and sell the products to retail customers before the expiration date on the packaging. When EAV confronted Sage about the sell-by dates, it became readily apparent that Sage had never performed any shelf-life study to determine whether the sell-by dates were accurate or whether the CBD Animal Products had a commercially viable shelf-life for retail sale. Despite advice to commence shelf-life testing in December 2018, it is clear that Sage did not commence their work on shelf-life stability until April 2019, some four months after the commercial relationship started. Further, EAV experienced a substantial number of complaints from its retail customers and trade partners related to the efficacy and performance of the Zen-Pen. Users noted that the Zen-Pen had a high rate of failure due to a defect in Sage's manufacturing of the device. When EAV raised concerns about the Zen-Pen's defects, Sage's response was for EAV to ask its retail customers to fix the Zen-Pen themselves by unfolding a paperclip and sticking the

end of the paperclip into the Zen-Pen and even produced a video explaining how to do it. Such a rudimentary solution was neither acceptable nor appropriate given the fact that EAV is a premium brand and the Zen-Pen sells at a retail price of between $50 and $80. Due to these and other issues with the Zen-Pen, many of EAV's trade and retail partners decided to delist the Zen-Pen product. This severely undermined the salability and marketability of the CBD Animal Products. These issues provided EAV with an immediate right of termination under ¶ 13.2(b) and (f) of the MESA, which provides termination rights if Sage "violate[s] the provisions of this Agreement regarding quality" or "fail[s] to inform [EAV] of any known deficiency in the Products if [Sage] is required to give [EAV] such notice under this Agreement." *See* Ex. A.

The cumulative effect of these and other issues severely depressed retail demand for EAV's Zen-Pen product. But, rather than simply abandon the relationship, EAV continued for the majority of 2019 to work with Sage in good faith, attempting to resolve the various issues with Sage's CBD Animal Products and / or renegotiate the contract terms to better align them with the realities of the marketplace. At the same time EAV also initiated a "loss making" buy 3 get 3 promotion for trade partners so that they could support the product and cover returns. However, on November 16, 2019, Sage sent EAV a Notice of Material Breach, claiming that EAV had breached the Agreement by "(i) fail[ing] to purchase the minimum number of units required in the first three calendar quarters of 2019 pursuant to Section 2 of SOW and (ii) EAV's unequivocal statements that it will not purchase the minimum number of units required to be purchased in the fourth calendar quarter of 2019, as well as all calendar quarters in (and for years) 2020 and 2021 pursuant to Section 2 of the SOW[]." A true and accurate copy of Sage's Notice of Material Breach is attached as <u>Exhibit C</u> to the Shanley Aff. Notably, Sage did not identify any other

purported breaches by EAV, other than the alleged failure to meet the Minimum Purchase Requirements in 2019 or in future years. *See* Ex. C.

In response, EAV sent to Sage a Notice of Breach, dated December 6, 2019, which outlined Sage's numerous material breaches of the Agreement and EAV's right to terminate. A true and accurate copy of EAV's Notice of Breach Letter is attached as Exhibit D to Shanley Aff. Although EAV acknowledged in the Notice of Breach that it had the immediate right to terminate the Agreement, EAV concluded with the following statement: "The above [breaches and issues] notwithstanding, and despite our profound disappointment at the distribution of breach notices as a negotiating tactic, we are willing to meet face to face to discuss the relationship under a situation where both our breach notices are retracted so that we can negotiate without the background of our fingers on the nuclear button." Ex. D.

After exchanging the notices, EAV provided Sage with ample opportunity to address these and other various issues. However, the serious issues with Sage's CBD Animal Products continued. In addition to poor sales volume, EAV experienced: a high complaint and return rate; losses related to additional investments required to support and maintain product listings with customers; trade partners delisting EAV's products; and new trade partners deciding not to list the products in the first place. All of these issues negatively impacted EAV's business and caused substantial reputational and commercial harm. Despite all of these issues, EAV continued to try to salvage the business relationship with Sage during the fourth quarter of 2019 and the first quarter of 2020. At the same time, in the first quarter of 2020, EAV commissioned its own study on the Zen-Pen failure rates and conducted 6 separate studies. Five out of six of these studies resulted in product failure rates of 70% or higher when used 24 times or less.

When no cure was forthcoming from Sage and the parties could not reach an alternative, mutually agreeable resolution, EAV sent a letter to Sage on March 11, 2020 terminating the Agreement (the "Termination Letter"). A true and accurate unsigned version of the EAV Termination Letter is attached as Exhibit E to the Shanley Aff. The Termination Letter expressly provides that EAV was exercising its right of termination under the MESA based on Sage's various breaches outlined in EAV's December 6, 2019 letter and that "any further dealings between the parties will occur under a different arrangement." Ex. E. Three weeks later, Sage commenced this lawsuit.

## II. PROCEDURAL HISTORY

Sage's Complaint asserts four causes of action against EAV: (1) breach of contract; (2) declaratory judgment; (3) anticipatory repudiation; and (4) violation of CUTPA. Count I seeks money damages for EAV's purported failure to purchase the Minimum Purchase Requirements of CBD Animal Products during 2019 and the first quarter of 2020, as well as "through the duration of the Agreements." Compl., ¶¶ 58-62. Count II seeks a declaratory judgment that the MESA and SOW remain valid and that "EAV's purported termination of the Agreements is improper and ineffective under the terms of the Agreements" and that "EAV remains bound to fulfill its obligations under the Agreements until they expire." Compl, ¶¶ 63-68. Count III seeks "additional damages" based on EAV alleged anticipatory repudiation of the Agreement. *Id.*, ¶¶ 69-83. Specifically, Sage claims that EAV's termination of the Agreement on March 11, 2020 constituted an anticipatory repudiation and that, as a result, "Sage has incurred additional damages in the form of lost future revenues and profits, among other things." *Id.*, ¶¶ 70, 73. Count IV seeks damages based on the claim that EAV's alleged conduct constitutes a violation of CUTPA. Compl., ¶¶ 74-88. Sage alleges that it relied upon EAV to meet its contractual obligations, that EAV willfully

refused to honor its contractual commitments, and that EAV has "attempted to leverage its own breaches . . . in an effort to coerce Sage to accept a different arrangement." *Id.*, ¶¶ 76-78, 80.

EAV moves pursuant to Rule 12(b)(6) to dismiss Counts II, III, and IV of the Complaint for failure to state a valid claim upon which relief may be granted.

## III.   LEGAL STANDARD

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) must be granted when the complaint fails to contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Gross v. Rell*, 695 F.3d 211, 215 (2d Cir. 2012). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that it is entitled to relief and the complaint is subject to dismissal. *Id*. at 679. Similarly, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Kim v. State Farm Fire & Cas. Co.*, 2015 U.S. Dist. LEXIS 147823 at *6 (D. Conn. Oct. 30, 2015) (internal quotation marks omitted.).

The plausibility standard set forth in *Iqbal* and *Twombly* requires a plaintiff to offer more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]," devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557). A court considering a motion to dismiss "begins its analysis by identifying pleadings that, because they are no more than conclusions, are not entitled to the

assumptions of truth. . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Next, the court must determine whether the well-pleaded factual allegations, assumed to be true, plausibly give rise to an entitlement of relief." *Hawkeye, LLC v. Zurich Am. Ins. Co.,* 2011 WL 1216408 at *1 (D. Conn. Mar. 29, 2011) (*citing Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010)) (citations and quotation marks omitted).

"When determining the sufficiency of plaintiff['s] claim for Rule 12(b)(6) purposes, consideration is limited to the factual allegations in [the] complaint . . ., documents attached to the complaint as an exhibit or incorporated in it by reference . . ., matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which plaintiff[ ] had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.1993). "[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a [document] upon which it solely relies and which is integral to the complaint," the court may also take that document into consideration in deciding the defendants' motion to dismiss. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–48 (2d Cir.1991).

## IV. ARGUMENT

While EAV disputes most of the allegations in Sage's Complaint, even if Sage could prove these allegations, the only conceivable claim would be breach of contract under Count I and the only remedy would be direct and actual damage stemming from the alleged breach. Sage's claim for declaratory relief (Count II) should be dismissed because federal courts consistently refuse to consider declaratory actions where the issues in dispute will be addressed and resolved by other counts. Here, a declaration as to the validity of the contract and EAV's right to terminate is inappropriate, as those issues are necessarily encompassed in Count I, which includes a claim for

9

future damages based on Sage's claim that EAV's termination was invalid. Sage's claim for additional damages for anticipatory repudiation (Count III) is also duplicative of Count I and, in any event, Sage is barred from seeking additional damages, including lost profits and revenue, under the express limitation of damages in the Agreement. Finally, Sage's claim under CUTPA is insufficient as a matter of law as it merely alleges an intentional breach of contract. Connecticut courts have repeatedly and consistently held that, as a matter of black letter law, a simple breach of contract, even if intentional, is insufficient to sustain a CUTPA claim. Accordingly, the Court should dismiss Counts II, III, and IV of Plaintiff's Complaint.

## A. Count II Should Be Dismissed Because Declaratory Relief is Inappropriate Where the Issues Will Be Addressed Through the Resolution of Count I.

In Count II, Sage seeks a declaration that the Agreement remains enforceable and that EAV's effort to terminate the Agreement was invalid. But the issue of contract validity and EAV's right to terminate will be directly and necessarily addressed in Count I, which seeks both current and future damages stemming from EAV's purported breach of the Agreement. Thus, there is no basis for declaratory relief and the Court should grant dismissal of Count II.

A federal court's jurisdiction to resolve issues by declaratory judgment arises from The Declaratory Judgment Act, 28, U.S.C. § 2201(a) (the "Act"). Under the Act, district courts retain broad discretion in determining whether to allow a claim for declaratory relief. *Fort v. Am. Fed'n Of State, Cty. And Mun. Emps.,* 375 F. App'x. 109, 112 (2d. Cir. Apr. 29, 2010) (summary order); *\*Dow Jones & Co., Inc. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003).[4] In deciding whether declaratory relief is available, courts consider whether the judgment will serve a useful purpose in clarifying the legal issues involved, whether a judgment would finalize the controversy and offer

---

[4]     An asterisk ("*") indicates cases upon which EAV principally relies.

relief from uncertainty, and whether the proposed remedy is being used merely for procedural fencing, or a race to <u>res</u> <u>judicata</u>. *Dow Jones*, 346 F.3d at 359.

Courts in the Second Circuit have consistently dismissed declaratory judgment claims where the declaration sought is duplicative of issues raised in the plaintiff's other causes of action. *See e.g., \*Ainsworth v. Amica Mutual Ins. Co.*, 2018 WL 4425991, \*7 (D. Conn. Sept. 17, 2018) (granting dismissal of declaratory judgment claim that sought declaration that defendant wrongfully denied insurance coverage where the breach of contract claim sought damages for denial of coverage); \**Goldmark, Inc. v. Catlin Syndicate Ltd.*, 2010 WL 5872337, at \*7–8 (E.D.N.Y. Nov. 22, 2010) (granting dismissal of declaratory judgment claim because it was "entirely redundant" of the breach of contract claim); \**Intellectual Capital Partner v. Institutional Credit Partners LLC*, 2009 WL 1974392, at \*6 (S.D.N.Y. July 8, 2009) (dismissing declaratory judgment count where "[a]ny 'cloud of uncertainty' regarding the scope and enforceability of the provisions [in the contract] will be dispelled in litigation of the breach of contract claim"); \**Sofi Classic S.A. de C.V. v. Hurowitz,* 444 F. Supp. 2d 231, 249–50 (S.D.N.Y.2006) ("Plaintiffs' declaratory judgment claim seeks resolution of legal issues that will, of necessity, be resolved in the course of the litigation of the other causes of action. Therefore, the claim is duplicative in that it seeks no relief that is not implicitly sought in the other causes of action.").

Here, Sage alleges in Count I that EAV breached the Agreement by failing to meet the Minimum Purchase Requirements and that "EAV has expressly and unequivocally advised Sage that EAV has no intention of meeting the Minimum Purchase Requirements through the duration of the Agreement[]." Compl.*, ¶¶ 58-60 (emphasis added). On this basis, Sage seeks breach of contract damages for both EAV's purported prior failure to purchase the minimum amount of CBD Animal Products as well as its alleged refusal to meet the requirements "***through the duration of***

*the Agreement*[].” *Id.* (emphasis added). To the extent it seeks damages for future breaches, Sage must necessarily prove that the Agreement remains valid and enforceable despite EAV's Termination Letter from March 11, 2020. *Id.* This is *entirely* duplicative of Sage's requested relief under Count II, which seeks a declaration that "EAV's purported termination of the Agreements is improper and ineffective under the terms of the Agreements; EAV remains bound to fulfill its obligations under the Agreements until they expire." *See* Compl., ¶ 68. Thus, there is no basis for declaratory judgment jurisdiction as all issues related to the ongoing validity of the Agreement and EAV's right of termination shall be fully addressed and resolved in Count I. Accordingly, Count II is redundant, unnecessary and should be dismissed by the Court.

The present case is strikingly similar to other cases in the Second Circuit where courts have dismissed declaratory judgment claims as duplicative of breach of contract claims. For instance, in *Utica Mut. Ins. Co. v. Fireman's Fund Ins. Co.*, the plaintiff sought a declaration that the defendant insurance company had breached the terms of the contract and was obligated to pay for present and future damages. 238 F. Supp. 3d 314, 325–26 (N.D.N.Y. 2017). The court noted that the plaintiff's breach of contract claim addressed similar issues as it contained allegations that the defendant was liable for "billings through August 31, 2019 [the date of the breach] . . . and that such damages are continuing." *Id.* The district court dismissed the declaratory judgment claim and concluded that "it is proper to decline jurisdiction over plaintiff's request for declaratory relief" because "[t]he declaration sought . . . will be addressed in Count I, the breach of contract claim." *Id.*

Similarly, in *Burgeson v. Downing*, Judge Eginton dismissed a declaratory judgment claim on the grounds that the requested declaratory relief would be addressed within the context of the breach of contract claim. 2009 WL 185593, at *1 (D. Conn. Jan. 22, 2009). The Court

noted that "[i]f plaintiff were to prevail on his claims for damages, the Court necessarily would have determined that plaintiff's rights were violated. A declaration to that effect adds nothing to the case. Accordingly, all claims for declaratory relief will be denied." *Id.* Similarly here, in order for Sage to prevail on its claim for future damages related to EAV's failure to purchase Sage's CBD Animal Product post-termination, it must necessarily prove that EAV's termination was somehow invalid and that the Agreement remains enforceable. Accordingly, the Court should grant dismissal of Count II as the requested declaration is unnecessary and duplicative of the issues in Count I.

**B.** **Count III Should Be Dismissed As It is Duplicative of Count I and Sage's Claim for Additional Damages is Barred By the Limitation of Damages Provision in the MESA.**

In Count III, Sage asserts a claim for anticipatory repudiation of the Agreement and seeks "additional damages" over and above what is otherwise available for breach of contract under Count I. However, Count III is entirely duplicative of Count I and the requested relief of additional damages is barred by the limitation of damages provision in the MESA. Sage has, therefore, failed to allege a viable cause of action under Count III.

1.  Count III is Entirely Duplicative of Count I, Which Already Seeks Breach of Contract Damages For Present and Future Harm.

At the outset, Count III is entirely duplicative of the allegations in Count I. As noted above, Count I asserts a claim for breach of contract damages for EAV's purported failure to purchase certain CBD Animal Products from Sage in the minimum amounts required under the Agreement. This claim expressly includes damages for the alleged breaches occurring both prior to the issuance of EAV's Termination Letter, as well as future damages based on a theory of anticipatory breach. *See* Compl., ¶¶ 58-60 (alleging that EAV "failed to meet the Minimum Purchase Requirements"

and "expressly and unequivocally advised Sage that EAV has no intention of meeting the Minimum Purchase Requirements through the duration of the Agreements"); *see also id.*, ¶ 51 (alleging that "EAV's purported termination of the MESA is an anticipatory repudiation of the Agreements."). Count I already includes a repudiation claim and a second "anticipatory repudiation" claim adds nothing to this case.

Moreover, Count III rests upon the exact same "nucleus of facts" alleged in Count I. *See Hilb Rogal & Hobbs Co. v. MacGinnitie*, 2005 WL 441509, at \*4 (D. Conn. Feb. 14, 2005) ("Claims are duplicative if they arise from the same nucleus of fact.") (internal quotation marks omitted). Specifically, Sage alleges in Count III that EAV improperly terminated the Agreement on March 11, 2020, that it has refused to perform the obligations of Agreement, and, as a result, has anticipatorily repudiated the Agreement. *See* Compl., ¶¶ 70-71. Based on this alleged conduct, Sage asserts a claim of anticipatory repudiation and seeks "additional damages in the form of lost future revenues and profits, among other things." *Id.*, ¶ 73. Notably, the only obligation that Sage alleges EAV has repudiated is the obligation to meet the Minimum Purchase Requirements, which is the same factual predicate for Sage's initial breach of contract claim under Count I. *See id.*, ¶ 60.

EAV's position is entirely consistent with Oregon law, which governs the construction and enforcement of the Agreement. *See* MESA (Ex. A), ¶ 15.9. Under Oregon law, an anticipatory repudiation is simply a subset of breach of contract. *See The Pet Stop Prof'l Pet Sitting Serv., LLC v. The Prof'l Pet-Sitting Serv. Inc.*, 2008 WL 2185339, \*22 (D. Ore. May 1, 2008) (noting that breach of contract and anticipatory repudiation claims were redundant). A party anticipatorily breaches a contract when it "refuse[s] by acts or deeds to perform [its] obligations under the contract, positively, unconditionally, unequivocally, distinctly and absolutely." \**Jitner v. Gersch*

*Dev. Co.*, 101 Or. App. 220, 224 (1990). Once a party anticipatorily repudiates the contract, the other party has the option to either (1) rescind the contract and pursue remedies based on recession, (2) treat the contract as still binding and wait until the time arrives for performance, or (3) treat the repudiation as an immediate breach and sue at once for damages which may have been sustained. \**Wilson v. W. All. Corp.*, 78 Or. App. 197, 201 (1986). If the nonbreaching party chooses to sue immediately, then it is entitled to recover "the damages occasioned by such anticipatory breach." *Id.* (quoting *Dibble v. Hodes Co.*, 132 Or. 596, 606 (1930)).

Here, Sage has sought present and future damages under Count I. Count III is premised upon the exact same facts (that Sage has incurred damages resulting from EAV's alleged refusal to purchase the minimum amount of Sage's CBD Animal Products after EAV issued the Termination Letter on March 11, 2020) and seeks the exact same relief (money damages arising from future obligations that have not yet arisen under the Agreement). Similarly duplicative claims have been dismissed in other cases within the Second Circuit. *See e.g., Holcombe v. Ingredients Sols., Inc.*, 2019 WL 1383432, at \*7 (D. Conn. Mar. 27, 2019), *aff'd and remanded*, 797 F. App'x 630 (2d Cir. 2020) (granting dismissal of promissory estoppel claim, in part, because it was "entirely duplicative of [plaintiff's] breach of contract claim); *Arch Ins. Co. v. Centerplan Constr. Co., LLC*, 2018 WL 6519063, at \*16 (D. Conn. Dec. 11, 2018) (dismissing breach of covenant of good faith counterclaim that was "essentially identical" to breach of contract counterclaim); *Roy v. Law Offices of B. Alan Seidler, P.C.*, 284 F. Supp. 3d 454, 457–58 (S.D.N.Y. 2018) (dismissing breach of contract claim that was not "plausibly distinct" from legal malpractice claim). The Court should dismiss Count III on the basis that it is duplicative of Count I.

Count III should also be dismissed on the basis that it does not set forth a viable form of relief. Specifically, while Sage seeks "additional damages in the form of lost future revenues and profits, among other things", such damages are barred by the limitation of damages provision in the MESA.[5] Oregon law expressly authorizes parties to limit the scope of damages by contract. Accordingly, Count III is barred to the extent it seeks any incidental, consequential, punitive, or other forms of additional damages, including lost profits and revenue.

The MESA contains a limitation of damages clause, which applies equally to both parties. Specifically, Paragraph 12 (titled "LIABILITY") states as follows:

> **NEITHER PARTY SHALL BE LIABLE IN CONTRACT, TORT, STRICT LIABILITY OR OTHER LEGAL OR EQUITABLE THEORY FOR ANY INCIDENTAL, SPECIAL, CONSEQUENTIAL, EXEMPLARY OR PUNITIVE DAMAGES OF ANY KIND, INCLUDING, WITHOUT LIMITATION, LOSS OF PROFITS, GOODWILL, TIME, SAVINGS OR REVENUE**. The provisions of this Section shall survive the expiration or earlier termination of this Agreement.

*See* MESA (Ex. A), ¶ 12 (bold font and capitalizations in original). The parties, therefore, clearly and definitively sought to limit damages to actual and direct harm flowing from any breach.

Under Article 2 of Oregon's Uniform Commercial Code ("UCC"), which applies to the sale of goods, a seller's damages for nonacceptance or repudiation of a contract for the sale of goods is either (1) the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages, but less expenses saved in consequence of the buyer's breach or (2) the profit which the seller would have made from full performance by the buyer, together with any incidental damages, with an allowance for costs

---

[5] The SOW incorporates by reference all provisions in the MESA. *See* SOW (Ex. B) (Introductory Paragraph).

reasonably incurred and due credit for payments or proceeds of resale. 2017 O.R.S. § 72.7080. The Oregon UCC defines "incidental damages" as "any commercially reasonable charges, expenses or commissions incurred in stopping delivery, in the transportation, care and custody of goods after the buyer's breach, in connection with return or resale of the goods or otherwise resulting from the breach." 2017 O.R.S. § 72.7100.

As a result, the Oregon UCC provides that a seller may recover damages for breach or repudiation of a contract based on the difference between the market price and the contract price or the profit which the seller would have made form full performance (whichever is deemed applicable by the Court), plus any incidental damages. But here, Paragraph 12 of the MESA precludes Sage from recovering "lost profit" or "incidental damages." Ex. A. Therefore, the only damages permissible under Oregon law and the Agreement, are those actual damages recoverable under Count I of the Complaint. Notably, the Oregon UCC does not provide sellers with the right to recover consequential damages, which are only recoverable by buyers. *See* ORS 72.7150 (defining "consequential damages" as only a buyer's right to recover "[a]ny loss resulting from the general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise"). And even if the UCC permitted Sage to recover consequential damages, such damages would also be expressly precluded under Paragraph 12 of the MESA.

Additionally, Paragraph 12 expressly precludes recovery for "LOSS OF PROFITS, GOODWILL, TIME, SAVINGS, OR REVENUE." Ex. A. Sage is therefore precluded from seeking additional damages for lost future profits or revenues. Stated differently, Sage is limited to recover only the direct and actual damages flowing from the breach of contract alleged under Count I and has no right to any further "additional damages" under Count III. Accordingly, Sage

has failed to state a claim for which relief may be granted under Count III and the claim should be dismissed.

Moreover, the limitation of damages provision is valid and enforceable under Oregon law. The Oregon UCC expressly provides that parties may limit the form of damages that are recoverable for breach of contract. *See* O.R.S. 72.7190(1)(a) ("The agreement may provide for remedies in addition to or in substitution for those provided in this chapter and may limit or alter the measure of damages recoverable under this chapter . . . ."). Additionally, Oregon courts have upheld similar contractual provisions that limited damages or remedies as between two commercial entities. In *K-Lines, Inc. v. Roberts Motor Co.*, the Oregon Supreme Court upheld a contract provision that limited the seller's liability for certain products to the cost of repairing or replacing the part and precluded the buyer from seeking any additional damages for personal injuries or property damages. 273 Or. 242, 245 (1975). In that case, the buyer sued to recover damages to its truck and trailers allegedly caused by a defect in the seller's product. *Id.* at 244. In holding that the limitation of liability and damages provision was enforceable, the court concluded that "[w]hen the parties are business concerns dealing in a commercial setting and entering into an unambiguous agreement", limitations of liability or damages provisions damages shall not be voided as contrary to public policy absent evidence of unusual circumstances. *Id.* at 252–53.

Oregon courts have even upheld limitation of damages provisions where one party claimed to not have negotiated the limitation provision, which was otherwise conspicuously set forth in the contract. *See \*J. Lilly, LLC v. Clearspan Fabric Structures Int'l, Inc*., 2020 WL 1855190, at \*5 (D. Or. Apr. 13, 2020) (provision barring consequential damages in construction contract held enforceable because it was conspicuously set forth in the contract in its own paragraph and printed in bold typeface). In \**Oregon Freeze Dry, Inc. v. Americold Logistics, LLC*, the district court

considered a limitation of damages clause that was almost exactly the same as the one in Paragraph 12 of the MESA.   2006 WL 2707967, *3 (D. Or. Sept. 18, 2006).   The contract provided that "Americold shall in no event be liable for incidental, indirect, exemplary, special or consequential damages, under any circumstances, including, but not limited to, lost profits, revenue or savings."). The district court held that the limitation of damages clause was enforceable, regardless of whether both parties negotiated for the provision, because it was conspicuously set forth in the contractual agreement. *Id.* at *10 (limitation of damages provision was conspicuous because it was "printed in slightly darker letters, is capitalized, with increased font set to match the heading of the section").   On this basis, the district court granted the defendant's motion for partial summary judgment on the grounds that the plaintiff's negligence claim was barred by the limitation of damages provision in the contract.   *Id.* at *13.

Here, the limitation of damages provision in Paragraph 12 of the MESA is enforceable as it is plainly conspicuous under Oregon law.   The terms are set forth in their own paragraph, the language is typed in bold-face and each letter is capitalized.   *See* Ex. A.   Additionally, there can be no claim that the provision is unconscionable or otherwise void for public policy as the Agreement involves two commercial entities and both parties benefitted from the limitation provision equally.   *See* MESA, ¶ 12 ("NEITHER PARTY SHALL BE LIABLE").   Thus, under both the Oregon UCC and the Agreement (as interpreted by Oregon law), Sage is limited to recover only the actual and direct damages stemming from its claimed breach of contract.   As those damages are already encompassed in Sage's initial breach of contract claim (Count I), Count III fails to state a claim upon which relief may be granted.

**C.    Count IV (CUTPA) Should Be Dismissed as Sage Merely Alleges an Intentional Breach of Contract, Which is Insufficient to Establish a Violation under CUPTA.**

Finally, Sage's CUTPA claim should be dismissed under the long-standing and well-established principal that a mere breach of contract, without more, is insufficient to establish an unfair trade practices claim under Connecticut law.   Sage has failed to allege any "aggravating circumstances" such as fraud, misrepresentation, or other serious misconduct that would elevate a simple breach of contract action to an actionable unfair or deceptive trade practice.  Indeed, the entirety of Sage's Complaint focuses solely on the intentionality of EAV's purported breach of contract, with only bare assertions and conclusory allegations that EAV terminated the Agreement in order to gain leverage in future negotiations with Sage.  These factual allegations fall well short of stating a viable CUPTA  claim and, therefore, Count IV should be dismissed.

CUTPA provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Conn. Gen. Stat. § 42-110b(a).  In considering whether a practice is unfair or deceptive, courts look to "(1) whether the practice, without necessarily having been  previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons] . . . .  All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Cadco, Ltd. v. Doctor's Assocs., Inc*., 188 Conn. App. 122, 132–33 (2019)*.*

"[I]t is well established that a breach of contract may, but does not necessarily, rise to the level of a CUTPA violation."  *Ulbrich v. Groth,* 310 Conn. 375, 432 (2013); *see *Boulevard Assocs. v. Sovereign Hotels, Inc.*,* 72 F.3d 1029, 1038–39 (2d Cir. 1995) (stating that a simple breach of contract is not sufficient on its own to state a CUTPA claim).  In order to state a viable CUTPA claim, a plaintiff's breach of contract claim must be coupled with "aggravating circumstances."  *See Ulbrich*, 310 Conn. at 411 (recognizing that "CUTPA was intended to provide a remedy that is separate and distinct from the remedies provided by contract law when the defendant's contractual breach was accompanied by aggravating circumstances.").  "Conduct that has been held to be substantial aggravating circumstances sufficient to support CUTPA claims includes fraudulent representations, fraudulent concealment, false claims ... and multiple breaches of contract."  *Martino v. Seterus, Inc*., 2018 WL 3553406, at *16 (D. Conn. July 23, 2018) (quoting *MedPricer.com, Inc. v. Becton Dickinson & Co.*, 2014 WL 3700992, at *3 (D. Conn. July 25, 2014).

Courts in the Second Circuit have previously rejected CUTPA claims where the defendant only breached the contract intentionally to back out of an unprofitable deal or to renegotiate a new contract.  In *Boulevard Assocs. v. Sovereign Hotels, Inc*., the Second Circuit reversed the district court's decision holding the defendant liable for a CUTPA violation for breach of a lease agreement.  72 F.3d at 1039.  The Second Circuit concluded that the defendant's mere breach of contract was insufficient to establish a CUTPA violation despite the fact that the defendant had threatened to breach the lease if the parties did not renegotiate the terms and then intentionally breached the lease in order to avoid its contractual obligations.  *Id.*

Similarly, in *Levitz, Lyons and Kesselman v. Reardon Law Firm, P.C.*, the district court (Arterton, J.) dismissed a CUTPA claim that was based merely on an intentional breach of contract.

2005 WL 8166987, at \*4-5 (D. Conn. Mar. 31, 2005).  In that case, the plaintiff alleged that the defendant law firm failed to pay the plaintiff a contractually agreed upon referral fee. *Id.* at \*5. The court concluded that allegations that defendant "attempted to renegotiate the agreement" and "manufactured reasons not to pay the fee owed" were insufficient to establish "aggravating circumstances" and instead, "simply highlight[ed] the intentional nature of the alleged breach." *Id.*  In dismissing the CUTPA claim, the court reasoned that if an intentional breach could constitute "aggravating" circumstances, then CUTPA "would subsume virtually each breach of contract." *Id.*

And finally, in \**Priority Sales Management, Inc. v. Carla's Pasta, Inc.*, the district court (Droney, J.) dismissed the plaintiff's CUTPA claim, which was premised upon allegations that the defendant improperly terminated a contract.  2011 WL 3819748, at \*3 (D. Conn. Aug. 26, 2011). Specifically, the plaintiff alleged that the defendant, in bad faith, utilized a "for cause termination" provision in the contract as a pretext in order to avoid its contractual obligations. *Id.*  The court concluded that these allegations constituted nothing more than a "simple breach of contract" and were insufficient to state a CUTPA claim under Rule 12(b)(6). *Id.*

In the present case, Sage merely alleges that EAV breached the terms of the Agreement by refusing to purchase the minimum required amounts of Sage's products and by terminating the Agreement allegedly without cause. *See* Compl., ¶¶ 77-81.  To the extent Sage claims that EAV breached the Agreement in order to avoid its obligations or to re-negotiate new terms, such allegations merely go to the intentionality of the breach.  They are insufficient to establish aggravating circumstances necessary to support a CUTPA claim under the holdings of *Boulevard Assoc.*, *Kesselman*, and *Priority Sales*.  In each of these three cases, the courts rejected CUTPA claims despite allegations that the defendants intentionally breached the contracts in order to avoid

their obligations or to renegotiate the contract terms. Indeed, similar to the present case, *Priority Sales* involved a CUTPA claim that was based on allegations that the defendant improperly used a "for cause" termination as a pretext for terminating the contract. 2011 WL 3819748, at *3. Consistent with these decisions, the Court should dismiss Sage's CUTPA claim as insufficient.

The only conceivable "aggravating circumstance" is Sage's naked assertion that "EAV has attempted to leverage its own breaches . . . in an effort to coerce Sage to accept a different arrangement." Compl., ¶ 80. In addition to being directly inconsistent with the case law cited above, this allegation is nothing more than conclusory allegations that is insufficient to withstand scrutiny under Rule 12(b)(6). *See Priority Sales Mgmt. Inc.*, 2011 WL 3819748, at *3 ("Courts have held that merely stating that the defendant's conduct violates public policy or is unfair and/or deceptive is not sufficient to sustain a CUTPA claim."). Indeed, the only factual allegation offered by Sage in support of its CUTPA claim is reference to a single sentence in EAV's Termination Letter that states: "Please understand that any further dealings between the parties will occur under a different arrangement." *See* Compl., ¶ 81. This statement merely reiterates EAV's position that the Agreement was terminated for cause. It cannot be used to draw a reasonable inference that EAV engaged in any immoral, unethical, or oppressive conduct. Thus, even if an intentional breach of contract and subsequent re-negotiation could support a CUTPA claim (which it cannot), Sage has failed to allege any facts to support that EAV had leverage over Sage or improperly asserted that leverage over Sage in future negotiations. Accordingly, Count IV must be dismissed.

## V.    CONCLUSION

For the foregoing reasons, Defendant respectfully request that this Court grant its motion to dismiss Counts II, III, and IV of Plaintiff's Complaint.

**DEFENDANT**
**EARTH ANIMAL VENTURES, INC.**

/s/ *Brian E. Moran*
Brian E. Moran (ct05058)
Andrew A. DePeau (ct30051)
ROBINSON & COLE LLP
1055 Washington Blvd., 9th Floor
Stamford, Connecticut 06901
Phone:  203-462-7512
Fax:  203-462-7599
Email: bmoran@rc.com
        adepeau@rc.com

*Attorneys for Defendant*

## CERTIFICATION

I hereby certify that on May 15, 2020, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent via e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing though the Court's CM/ECF System.

*/s/ Andrew A. DePeau*
Andrew A. DePeau