# EXHIBIT D



By Federal Express
Sage Door Holdings
2905 4th Avenue South
Seattle, WA 98134

Attention: Richard Calafiore

December 6th, 2019

RE: <u>Notice of Material Breach</u>

Dear Richard,

Earth Animal Ventures, Inc. has received the letter dated November 16, 2019 from Sage Door Holdings, which we have read and understood.

As you know, we at Earth Animal have been working tremendously hard to make the partnership work throughout 2019, but in the light of your most recent correspondence, we now feel it necessary to notify you formally of Sage's various breaches of the Agreement of November 13, 2018 and Statement of Work no. 1.

In detailing the breaches below, Earth Animal reserves its rights to raise other breaches at any time. Paragraph 13.4 of the Agreement states that "Any failure by either party to notify the other party of a violation, default or breach of this Agreement, or to terminate this Agreement on account thereof, shall not constitute a waiver of such violation, default or breach or consent, acquiescence or waiver of any later violation, default or breach, whether of the same or a different character."

Sage has failed to provide credits against the purchase of products as required by Statement of Work No. 1. Specifically, Earth Animal advanced $250,000.00 to Sage. Sage was required to repay this loan with interest by crediting the amounts due from Earth Animal beginning in May, 2019. Sage has failed to apply these credits. Earth Animal therefore demands immediate payment of all amounts required to be credited to Earth Animal by Sage, which were wrongfully collected by Sage.

Further, it is now obvious that Sage obtained the $250,000.00 under false pretenses, and that Sage's delivery of defective products described below is a direct result of Sage's underfunding and need for the loan. The Agreement states that the money was intended "to assist Seller in building the capacity necessary to comply with this Agreement." At the time of negotiation, you represented Sage as well-funded company, with capital investment and a vibrant human product market sufficient to perform the Agreement. These were material misrepresentations. Earth Animal advanced $250,000.00 to Sage in the good-faith belief that Sage would use the funds to secure biomass, exclusively for use in Earth



Animal products as required by the exclusivity provisions of the Agreement. Earth Animal now understands that the $250,000.00 was instead used to bolster Sage's general business instead of focus on the Earth Animal products. Because Sage diverted funding to general business purposes and failed to invest sufficiently in the creation of deliverable pet products, Sage's deliverables were defective. If Sage did, in fact, spend the funds specifically on the advance purchase of biomass and device orders you should provide original documentation of these expenditures. Earth Animal is entitled to such documents under paragraph 1.5(d).

At this point, Earth Animal would also like to reclarify the basis on which our minimum order quantity was agreed to. As part of our discussions on the topic, we had detailed conversations over minimum order quantities, with Earth Animal counselling that as new market entrants it would be very difficult to forecast exact volumes. We also shared commercial insights on the potential unacheivability of 400,000 units in the first year. Please refer to our email dated October 15, 2018 as just one example of correspondence on the subject. We also, throughout the course of the first quarter of 2019, repeatedly expressed the unachievability of these numbers and suggested alternative goals and actions to keep the partnership intact. Please refer to our email dated May 23, 2019 as one of many examples. At the time of negotiating the contract, you declared that your need for an unusually high MOQ was being driven by the need to secure the supply of pens. This discussion resulted in you disclosing the raw cost of the pens and a conclusion that, if we were to fall short in our orders, our only liability would be to fund the empty unused but ordered pens or settle with your supplier. It was on the basis of this calculus that we acquiesced to your volume request. This is important because on this basis EAV's maximum liability is less than $1 million annually on a raw materials basis.

Sage has violated three provisions of Section 13.2, any of which permit Earth Animal to terminate the Agreement immediately, which we intend to act on if we cannot resolve our differences quickly.

Sage has violated paragraph 13.2(b) by failing to deliver products free from defects in materials and workmanship and has therefore "violated the provisions of this Agreement regarding quality." Specifically, the products have a high rate of failure due to the poor delivery device used by Sage. Earth Animal continues to receive frequent consumer and trade complaints, including notices from our trade partners that they have delisted the products. Your post-facto remedial solution (the production of a video showing frustrated customers how to fix the fault themselves using a paperclip) does not rectify Sage's failure to deliver a product free from defects in the first place. Further, your "solution" is both inadequate as a remedy and inappropriate for a premium brand and product retailing between $50 and $80. The poor quality of Sage's products continues to cause harm to Earth Animal's reputation, and we are at this moment conducting a thorough trade review in cooperation with our Sales Team to investigate the true extent of this.

Sage further violated subparagraph (b) by failing to deliver the product agreed upon. The express discussions of the products to be delivered required a version 2 pen in short order with laser etched branding and with a unique consumer friendly form factor to be in production within 6 months. Sage never accomplished any of these improvements. Please refer to email correspondence of October 5 and 8 of 2018 and May 23, 2019 regarding these issues. As a result of this failure, Earth Animal continues to



try to market a medical-type device in a consumer market, again significantly inhibiting Earth Animal's ability to sell product.

Sage further violated subparagraph (b) by delivering product with commercially unviable sell-by dates, without Earth Animal's agreement, which resulted in significant recall and repackaging costs paid by Earth Animal. This was due to Sage's failure to have adequate shelf life study data to support commercially viable sell-by dates at the time of production. To make matters worse we engaged Sage to travel to Wear The Best as "how to" experts with the express mandate to ensure our fulfilment partner executed a restickering project to our brief. Sage compounded this product failure on November 4 by instructing our distribution partners at Wear the Best to simply place a sticker over the erroneous sell-by date, which is commercially unviable. This has resulted in significant further delays and rework costs, all bourn by Earth Animal, although such costs were the direct result of Sage's failure to obtain appropriate data and correctly label the products in the first place. We feel that Sage should immediately reimburse Earth Animal for these costs, which we are in the process of calculating. You may wish to review the email from Kiersten Carey dated November 16, 2019.

Sage violated paragraph 13.2(e) of the Agreement by failing to deliver at least 85% of products required by Statements of Work or Product Orders in any six-month period. Specifically, Sage failed to deliver 85% of the 10mg pens ordered by Earth Animal for the first six months of 2019. This event alone allows Earth Animal to terminate our agreement with immediate effect if we so choose.

Sage violated paragraph 13.2(f) of the Agreement through its failure to notify Earth Animal of the known defects in the products. Specifically, and again with reference to the failure of the devices as noted above, Sage must have known of the defect and failed to inform Earth Animal of the defect in the first place or of Sage's failure to take any steps to remediate the failure. The defect would clearly have been revealed in Sage's testing of the product prior to the delivery. Note that, should Sage contend that it simply did not test, or performed insufficient testing of, the products, such a contention would raise further issues.

Because Sage's products do not conform to the Agreement and are not functioning as intended, paragraph 6.6 of the Agreement provides for a recall of the products delivered to third parties. Earth Animal has refrained from requiring Sage to recall the products while we were working together and until we have completed our channel review. In light of your letter, Earth Animal is giving notice that, pending the findings of our trade audit, we are considering a recall. If, in the light of our findings, we deem a recall necessary, Sage must recall all defective product runs as per the requirements of our Agreement.

Finally, we also note at this point that you have continuously been in breach of paragraphs 5.4, 5.5, 6.1, 6.3, and 7.4 of our agreement.



The above notwithstanding, and despite our profound disappointment at the distribution of breach notices as a negotiating tactic, we are willing to meet face to face to discuss the relationship under a situation where both our breach notices are retracted so that we can negotiate without the background of our fingers on the nuclear button.

Truly Yours,

Stewart Shanley and Bob Goldstein
For and on behalf of Earth Animal

Cc: Anthony J. Musto, Esq.
One Eliot Place, 3rd Floor
Fairfield, CT 06824

Cc: Michael F. Mulpeter
Cohn Birnbaum & Shea P.C.
100 Pearl St., 12th Floor
Hartford, CT 06103