UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SAGE FULFILLMENT, LLC,<br>        *Plaintiff,*<br><br>        v.<br><br>EARTH ANIMAL VENTURES, Inc.,<br>        *Defendant.* | No. 3:20-cv-00444 (VAB) |

**RULING AND ORDER ON MOTION TO DISMISS**

Sage Fulfillment LLC ("Plaintiff" or "Sage") has sued Earth Animal Ventures, Inc. ("Defendant" or "EAV") for breach of contract, improper termination, anticipatory repudiation, and violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110 *et seq.* ("CUTPA"). Compl., ECF No. 1 (Apr. 1, 2020).

The Defendants have filed a motion to dismiss all claims, except for the breach of contract claim.

For the reasons stated below, Defendant's motion to dismiss is **GRANTED in part and DENIED in part**.

The claim for declaratory relief will be dismissed; the other claims will continue for now.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

    **A. Factual Allegations**

    1.      Sage Fulfillment, LLC is allegedly "a manufacturer and wholesale distributor of certain products, including cannabinoid ("CBD") oil." Compl. ¶ 14. Earth Animal Ventures, Inc. is allegedly "engaged in the business of wholesale marketing, selling and distributing various products for use on animals." *Id.* ¶ 15. Sage was allegedly formed "on or about September 10, 2018" to become "EAV's exclusive supplier of CBD

1

Animal Products." *Id.* ¶ 18. The parties allegedly "entered into an agreement concerning Sage's provision of CBD Animal Products to EAV, memorialized in a Master Exclusive Supply Agreement," which became effective on November 13, 2018. *Id.* ¶ 19; *see* Master Exclusive Supply Agreement, ECF No. 19-2, Exhibit A (May 15, 2020) ("MESA"). The Master Exclusive Supply Agreement allegedly "provides that Sage shall exclusively manufacture and deliver CBD Animal Products to EAV, and EAV shall exclusively purchase CBD Animal Products from Sage." *Id.* ¶ 21. Sage alleges that the Master Exclusive Supply Agreement was set to be effective through December 31, 2021, "unless properly terminated or extended." *Id.* ¶ 20.

"On or about December 6, 2018," the parties allegedly "executed Statement of Work No. 1," which became effective January 1, 2019 and remains effective until December 31, 2021. *Id.* ¶¶ 22-23; *see* Statement of Work No. 1, ECF No. 19-3, Exhibit B (May 15, 2020) ("SOW1"). The SOW1 allegedly "provides that EAV shall exclusively purchase of all products from Sage . . . provided that EAV meets certain minimum Product Order commitments." *Id.* ¶ 26. Sage alleges that the products covered by the SOW1 consisted of two components: "(1) a syringe-like device (the 'Pen') and (2) cannabinoid oil transdermal gel with 'Uptake' ('CBD Gel')". *Id.* ¶ 28.

Starting in or around May 2018, Sage allegedly "provided multiple formulas of CBD Gel for EAV to test, and EAV expressly approved the formula for the CBD Gel that Sage put into production for EAV." *Id.* ¶ 30. Sage allegedly chose its device manufacturer, the model for the Pen, and the formula for the CBD Gel solely to satisfy requests made by the Defendant. *Id.* ¶ 31-36.

Sage alleges that "EAV agreed to order a minimum of 400,000 units of the Products annually beginning January 1, 2019, through December 31, 2021, for a total minimum of 1,200,000 units of Products for the entire SOW1 Term." *Id.* ¶ 38. Sage further alleges that "[i]n reliance on EAV's promise to fulfill the Minimum Purchase Requirements, [it] invested substantial capital to develop capacity to manufacture CBD Gel and other CBD Animal Products exclusively for EAV." *Id.* ¶ 41. 43. Allegedly, "[u]nder the Agreements, EAV is required to purchase 400,000 units of the Products each year through December 31, 2021, which would yield revenues of approximately $5,950,000 each year in 2019, 2020, and 2021." *Id.* ¶ 43.

Allegedly, "[i]n 2019, EAV submitted purchase orders to Sage for only 75,000 units of the Products" before July 1, 2019, which Sage alleges "yielded revenues of only $1,115,625." *Id.* ¶¶ 44-45. Sage alleges that "EAV has not ordered any units of the Products since the second calendar quarter of 2019." *Id.* ¶ 45.

On or around November 16, 2019, Sage allegedly sent a letter to EAV, stating that "its failure to meet its Minimum Purchase Requirements in the first three quarters of 2019" and alleged statements by EAV "that it would not meet the Minimum Purchase Requirements during the remainder of the [Statement of Work No. 1] Term, were material breaches" of the Statement of Work No. 1 and the Master Exclusive Supply Agreement (the "Agreements"). *Id.* ¶ 46.

On or around December 6, 2019, EAV allegedly wrote a letter to Sage that accused the company of making various material breaches of the Agreements. *Id.* ¶ 47. Sage alleges that it cured any and all breaches on or before January 8, 2020. *Id.* ¶ 48.

Still, on or around March 11, 2020, EAV allegedly gave Sage notice that it was terminating the Master Exclusive Supply Agreement and that any further dealing would only occur under a different arrangement. *Id.* ¶ 49.

### B. Procedural History

On April 1, 2020, Sage Fulfillment LLC filed a Complaint against Earth Animal Ventures, LLC and Earth Animal Ventures, Inc with four causes of action: breach of contract ("Count I"); declaratory judgment for improper termination ("Count II"); anticipatory repudiation ("Count III"); and violation of the Connecticut Unfair Trade Practices Act ("Count IV"). Compl. at 8–11.

On April 15, 2020, Sage moved to dismiss Earth Animal Ventures, LLC from the litigation. Mot. to Dismiss, ECF No. 9 (Apr. 15, 2020). On June 2, 2020, the Court granted this motion, dismissing Earth Animal Ventures without prejudice. Order, ECF No. 21 (June 2, 2020).

On May 15, 2020, the remaining defendant, Earth Animal Ventures, Inc., filed a motion to dismiss Counts II, III and IV of the Complaint. Mot. to Dismiss, ECF No. 18 (May 15, 2020); Mem. in Support of Mot. to Dismiss, ECF No. 19 (May 15, 2020) ("Def.'s Mem.").

On June 5, 2020, Sage filed a memorandum in opposition to the Defendant's motion to dismiss. Mem. in Opp'n, ECF No. 24 (June 5, 2020) ("Pl.'s Mem. in Opp'n").

On June 19, 2020, Earth Animal Ventures, Inc. filed a reply to Sage's memorandum in opposition of the motion to dismiss. Reply, ECF No. 25 (June 19, 2020) ("Def.'s Reply").

On October 23, 2020, the Court held a motion hearing. Min. Entry, ECF 50 (Oct. 23, 2020)

## II. STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a

complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.")).

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider

5

"matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

### III. DISCUSSION

EAV has moved to dismiss the last three claims in Sage's Complaint, Counts II-IV. The Court will address each of these claims in turn.

#### A. The Declaratory Judgment Claim

Under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), district courts are vested "with broad discretion to decline jurisdiction over requests for declaratory relief." *Fort v. Am. Fed'n Of State, Cnty. and Mun. Emps.*, 375 F. App'x. 109, 112 (2d. Cir. Apr. 29, 2010) (citing *Dow Jones & Co., Inc. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003) (internal quotation marks omitted)). Exercising this authority, courts in this District and within this Circuit have dismissed claims for declaratory relief as merely duplicative of other claims in the lawsuit. *See Ainsworth v. Amica Mut. Ins. Co.*, No. 3:16-cv-01139 (MPS), 2018 WL 4425991 at *7 (D. Conn. Sept. 17, 2018) (dismissing declaratory judgment claim "entirely duplicative of the relief sought in the plaintiffs' breach of contract claim") (citing *Burgeson v. Downing*, No. 3:06-cv-1663 (WWE/HBF), 2009 WL 185593 at *1 (D. Conn. Jan. 22, 2009); *In re Methyl Tertiary Butyl Ether* (MTBE) *Prod.*, 457 F.Supp.2d 455, 466 (S.D.N.Y. 2006)).

EAV argues that Count II of Sage's Complaint is "directly and necessarily addressed in Count I," which seeks damages stemming from the Defendant's alleged breach of contract. Def.'s Mem. at 10. Consequently, in its view, there is no basis for declaratory relief. *Id.*

6

Because Sage "concedes that its request for declaratory relief is unnecessary," Pl.'s Mem. in Opp'n at 2, the Court will dismiss this claim from the case.

### B. The Anticipatory Repudiation of Agreements Claim

"An anticipatory repudiation occurs . . . when an obligor communicates to an obligee that he will commit a breach in the future." *Franconia Assocs. v. United States*, 536 U.S. 129, 139 (2002) (internal citation and quotation marks omitted).

EAV argues that this claim is duplicative of the breach of contract claim and therefore should be dismissed. In its view, "the only obligation that Sage alleges EAV has repudiated is the obligation to meet the Minimum Purchase Requirements, which [EAV alleges] is the same factual predicate for Sage's initial breach of contract claim under Count I." Def.'s Mem. at 14. EAV points to Oregon law, the law chosen to govern the construction and enforcement of the Master Exclusive Supply Agreement. *Id.* (referencing MESA ¶ 15.9.), and asserts that "[u]nder Oregon law, an anticipatory repudiation is simply a subset of breach of contract." Def.'s Mem. at 14. EAV further argues that Sage's anticipatory repudiation claim is "premised upon the exact same facts . . . and seeks the exact same relief" as Count I's breach of contract claim. *Id.* at 15.

Sage argues that even though "[c]ourts may dismiss duplicative claims that arise from the <u>same facts</u> and seek the <u>same relief</u> as another claim." Pl.'s Mem. in Opp'n at 9 (emphasis in original) (internal quotation marks omitted), "Counts I and III focus on different facts," *id.* Specifically, Sage asserts, "Count I highlights EAV's failure to satisfy the past Minimum Purchase Requirements in 2019 and the first quarter of 2020, as well as the annual requirement for 2019 of 400,000 units . . . [while] Count III alleges that EAV's improper termination of the MESA through its March 2020 letter amounts to an anticipatory repudiation," because the performance is not yet due. *Id.*

7

In response, EAV argues that the breach of contract claim encompasses both past and future lost profits. Def.'s Reply at 2.

EAV also argues that even if the Court interprets the anticipatory repudiation and breach of contract claims as distinct causes of action, the relief sought for the alleged anticipatory repudiation is precluded by the Master Exclusive Supply Agreement. Def.'s Mem. at 16. In their view, under Oregon law, "the measure of damages for nonacceptance or repudiation by the buyer is the difference between the market price at the time and place for tender and the unpaid contract price together with any incidental damages . . . .[or if that remedy] is inadequate to put the seller in as good a position as performance would have done then the measure of damages is the profit (including reasonable overhead) which the seller would have made from full performance by the buyer, together with any incidental damages" *Id.* (citing Or. Rev. Stat. Ann. § 72.7080).

Paragraph 12 of the MESA states:

> **NEITHER PARTY SHALL BE LIABLE IN CONTRACT, TORT, STRICT LIABILITY OR OTHER LEGAL OR EQUITABLE THEORY FOR ANY INCIDENTAL, SPECIAL, CONSEQUENTIAL, EXEMPLARY OR PUNITIVE DAMAGES OF ANY KIND, INCLUDING, WITHOUT LIMITATION, LOSS OF PROFITS, GOODWILL, TIME, SAVINGS OR REVENUE.** The provisions of this Section shall survive the expiration or earlier termination of this Agreement.

MESA ¶ 12 (emphasis in original)**.** In EAV's view, the Master Exclusive Supply Agreement limits the recovery of breach of contract damages under the Oregon Uniform Commercial Code, because it bars claims "to the extent [they seek] any incidental, consequential, punitive, or other forms of additional damages, including lost profits and revenue." Def.'s Mem. at 16.

As a result, in its view, "the only damages permissible under Oregon law and the Agreement[ ] are those actual damages recoverable under Count I of the Complaint." *Id.* at 17;

8

*see also id.* at 18 (referencing Or. Rev. Stat. Ann. § 72.7190(1)(a) ("The agreement may provide for remedies in addition to or in substitution for those provided in this chapter and may limit or alter the measure of damages recoverable under this chapter . . . .")).

Sage argues that the lost profits in dispute do not constitute consequential or additional damages. *See* Pl.'s Mem. in Opp'n at 13. In its view,

> [l]ost profits are consequential damages when, as a result of the breach, the non-breaching party suffers loss of profits on collateral business arrangements . . . By contrast, when the non-breaching party seeks only to recover money that the breaching party agreed to pay under the contract, the damages sought are general damages.

*Id.* (citing *Tractebel Energy Mktg., Inc. v. AEP Power Mktg., Inc.*, 487 F.3d 89, 109 (2d Cir. 2007)).

Sage also argues that it is premature to dismiss this claim and cites to *Dresser-Rand Co. v. Ingersoll Rand Co.*, No. 18-CV-3225 (AJN), 2019 WL 1434575 (S.D.N.Y. Mar. 29, 2019). *See* Pl.'s Mem. in Opp'n at 11. In *Dresser-Rand*,

> [the defendant] provide[d] no argument why [the plaintiff] could not pursue two separate theories of liability—repudiation and breach of contract—for [the plaintiff]'s purported breach . . . [W]hen drawing all inferences in favor of the nonmoving party, Rule 8(d) offers sufficient latitude to construe separate allegations in a complaint as alternative theories. That latitude is appropriately exercised here.

*Id.* at *7 (internal citation omitted) (quoting *Adler v. Pataki*, 185 F.3d 35, 41 (2d Cir. 1999)).

The Court agrees.

"The rules for determining the damages recoverable for an anticipatory breach are the same as in the case of a breach at the time fixed for performance." *Kotan v. Sch. Dist. No. 110C*, 13 Or. App. 139, 150 (1973) (quoting 1 Restatement 548–49, Contracts § 338). And "[r]epudiation does not accelerate the time fixed for performance; nor does it change the damages to be awarded as the equivalent of the promised performance." *Id.* at 150-51. Here, the

9

anticipatory repudiation claim arguably seeks to ensure that Sage is made whole for the future sales contemplated by the contract. *See Gray v. Mitsui & Co. (U.S.A.), Inc.*, 434 F.Supp. 1071 (D. Or. 1977) (finding that due to its anticipatory breach of contract, the defendant was obligated to pay the plaintiff the full commission the plaintiff would have earned during the ten-year contract term). In other words, the anticipatory repudiation claim is viable if it is an alternative theory of recovery for the same future loss profits provided for under the breach of contract claim. *See Dresser-Rand Co.*, 2019 WL 1434575 at *7 ("Rule 8(d) offers sufficient latitude to construe separate allegations in a complaint as alternative theories.").[1]

Accordingly, the anticipatory repudiation claim will not be dismissed.

### C. The Connecticut Unfair Trade Practices Act Claim

The Connecticut Unfair Trade Practices Act provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn.Gen.Stat. § 42-110b(a). "Connecticut has adopted the [Federal Trade] Commission's 'cigarette rule' to determine whether a practice is unfair under CUTPA. The factors to be weighed . . . are '(1) [w]hether the practice, without necessarily having been previously considered unlawful, offends public policy…; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers.'" *Fabri v. United Techs. Int'l, Inc.*, 387 F.3d 109, 120-21 (2d Cir. 2004) (quoting *Cheshire Mortg. Serv. Inc. v. Montes*, 223 Conn. 80, 105-06 (1992)); *see Naples v. Keystone Bldg. & Dev. Corp.*, 295 Conn. 214, 227-28 (2010) (referencing the cigarette rule's three factors and adding that "not every contractual breach rises to the level of a CUTPA violation").

---

[1] While EAV argues that there is no viable claim for future loss profits, even under the breach of contract claim, that issue is not squarely before the Court, as EAV has not moved to dismiss the breach of contract claim. As a result, the Court will exercise its "inherent authority to manage [its] docket[ ] and courtroom[ ] with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 136 S.Ct. 1885, 1892 (2016).

"A simple breach of contract cannot constitute a violation of the Connecticut Unfair Trade Practices Act . . . There must be significant aggravating circumstances." *Boulevard Assocs. v. Sovereign Hotels, Inc.*, 72 F.3d 1029, 1040 (2d Cir. 1995); *see also Greene v. Orsini*, 50 Conn. Supp. 312, 315 (Super. Ct. 2007) ("A simple breach of contract does not offend traditional notions of fairness and, standing alone, does not offend public policy so as to invoke CUTPA. A CUTPA claim lies where the facts alleged support a claim for more than a mere breach of contract. Depending upon the nature of the assertions, however, the same facts that establish a breach of contract claim may be sufficient to establish a CUTPA violation."); *Western World Ins. Co. v. Architectural Builders of Westport, LLC*, 520 F. Supp. 2d 408, 414 (D. Conn. 2007) ("[A] simple violation of the Policy, which is a contract, would be insufficient to establish a CUTPA claim."); *City of Bridgeport v. Aerialscope, Inc.*, 122 F. Supp. 2d 275, 278 (D. Conn. 2000) ("To reiterate, generally, a breach of contract action does not constitute a claim under CUTPA.").

The focus is "whether the defendant's breach of contract was merely negligent or incompetent, in which case the CUTPA claim was barred, or whether the defendant's actions would support a finding of intentional, reckless, unethical or unscrupulous conduct, in which case the contractual breach will support a CUTPA claim under the second prong of the cigarette rule." *Ulbrich v. Groth*, 310 Conn. 375, 410 (2013) (citing *Naples v. Keystone Bldg. & Dev. Corp.*, 295 Conn. 214, 228 (2010)). CUTPA is "intended to provide a remedy that is separate and distinct from the remedies provided by contract law when the defendant's contractual breach was accompanied by aggravating circumstances." *Id.* at 411 (citations and footnote omitted).

EAV argues that "breach of contract, without more, is insufficient to establish an unfair trade practices claim under Connecticut law." Def.'s Mem. at 20; *see id.* at 21 (citing *Boulevard,*

11

72 F.3d at 1039). The Defendants also cite to *Lyons and Kesselman v. Reardon Law Firm, P.C.*, No. 3:04-cv-00870 (JBA), 2005 WL 8166987, at *5 (D. Conn. Mar. 31, 2005) for the proposition that "if an intentional breach could constitute 'aggravating' circumstances, then CUTPA 'would subsume virtually each breach of contract.'" *Id.* at 22.

Sage acknowledges that a single breach of contract will not suffice to support a CUTPA violation, absent "substantial aggravating circumstances." Pl.'s Mem. in Opp'n at 23 (citing *Bartold v. Wells Fargo Bank, N.A.*, No. 14-CV-00865 (VAB), 2015 WL 7458504, at *6 (D. Conn. Nov. 24, 2015)). But Sage argues that EAV allegedly committed multiple breaches of contract and thus, there are substantial aggravating circumstances sufficient for a viable CUTPA claim. *See* Pl.'s Mem. in Opp'n at 24-25, (referencing several cases, including *Charter Practices Int'l, LLC v. Robb*, No. 3:12-cv-1768 (RNC), 2017 WL 4366717, at *3 (D. Conn. Sept. 30, 2017) ("When a CUTPA claim is predicated on a breach of contract, the claim may fail unless the plaintiff proves substantial aggravating circumstances attending the breach of contract . . . This requirement may be satisfied by proof of multiple breaches of contract." (internal citations and quotation marks omitted)); *IKON Office Solutions, Inc. v. C-Tech New Haven, Inc.*, No. CV106013865S, 2011 WL 782702, at *2 (Conn. Super. Ct. Feb. 3, 2011) ("[M]ultiple breaches of contract may raise a breach of contract claim to the level of a CUTPA violation.") (internal citation omitted).

In response, EAV argues that the Complaint rests upon a single breach, that EAV failed to purchase the required minimum quantity of CBD Animal Products from Sage, and if its termination letter establishes a CUTPA violation, "then nearly every business dispute over a contracting party's termination rights could be bootstrapped and transformed into an unfair and deceptive trade practice." Def.'s Reply at 7.

The Court disagrees, for now.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Sage alleges that "EAV has willfully and maliciously engaged in conduct offensive to public policy, common law principles, and established concepts of fairness," Compl. ¶ 82, in part because "EAV understood and appreciated that Sage had invested substantial capital, resources, and goodwill into being EAV's exclusive supplier of CBD Animal Products," *id.* ¶ 77. Sage also alleges that it "has suffered and will continue to suffer an ascertainable loss of money and/or property as a result of EAV's actions." *Id.* ¶ 87.

These allegations barely suggest a plausible "entitlement to relief." *Twombly*, 550 U.S. at 555; *id.* ("[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (internal citations omitted). Indeed, as EAV points out, any harm appears to flow from a single breach, the failure to purchase the required minimum quantity of CBD Animal Products from Sage, and nothing more. Nevertheless, because other claims will continue, at least for now, the Court will allow Sage to develop this claim and will review these alleged "aggravating circumstances" again at a later stage of this case, following discovery. *See Dietz*, 136 S.Ct. at 1892 (recognizing that "courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases.").

Accordingly. Sage's CUTPA claim will not be dismissed.

## IV.   CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is **GRANTED in part and DENIED in part**.

The claim for declaratory relief will be dismissed; the other claims will continue for now.

**SO ORDERED** at Bridgeport, Connecticut, this 31st day of October, 2020.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE