### UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

```
------------------------------X
                              :
SAGE FULFILLMENT, LLC         :    Civil No. 3:20CV00444(SALM)
                              :
v.                            :
                              :
EARTH ANIMAL VENTURES, INC.   :    April 1, 2022
                              :
------------------------------X
```

## RULING AND ORDER ON PLAINTIFF'S MOTION TO STRIKE [DOC. #145]

Plaintiff Sage Fulfillment, LLC ("Sage") brought this action against defendant Earth Animal Ventures, Inc. ("EAV"), asserting multiple claims arising from an alleged breach of contract. See Doc. #1. In its Answer, EAV asserted counterclaims against Sage and joined Richard Calafiore ("Calafiore") and The Sage Door, LLC ("Sage Door") as counterclaim-defendants. See Doc. #54 at 29-66.[1] Now before the Court is Sage's renewed motion to strike EAV's joinder of Calafiore and Sage Door as counterclaim-defendants. See Doc. #145. EAV has filed an opposition to the motion, and Sage has filed a reply. See Docs. #156, #163. For the reasons set forth herein, Sage's Renewed Motion to Strike Joinder **[Doc. #145]** is **DENIED**.

---

[1] Throughout this Ruling, the Court cites to the page numbers reflected in each document's ECF header, rather than any numbering applied by the filing party.

## I.  PROCEDURAL BACKGROUND

Sage brought this action on April 1, 2020, asserting four counts: (1) "Breach of Contract -- Minimum Purchase Requirements[;]" (2) "Declaratory Judgment -- Improper Termination[;]" (3) "Anticipatory Repudiation[;]" and (4) "Violation of the Connecticut Unfair Trade Practices Act" ("CUTPA"). Doc. #1 at 8-11. On May 15, 2020, EAV filed a Motion to Dismiss the Declaratory Judgment, Anticipatory Repudiation, and CUTPA claims. See Doc. #18.

On June 1, 2020, while the Motion to Dismiss (Doc. #18) was pending, the parties filed their Rule 26(f) report. See Doc. #20. The 26(f) Report reflects that the parties agreed to seek deadlines of June 12, 2020, and July 15, 2020, for plaintiff and defendant, respectively, to join parties. See Doc. #20 at 5. On June 2, 2020, Judge Victor A. Bolden, the then-presiding Judge, entered a scheduling order permitting joinder of additional parties by Sage on or before June 12, 2020, and by EAV on or before July 17, 2020. See Doc. #22.

On October 31, 2020, Judge Bolden granted the Motion to Dismiss as to Count Two, Declaratory Judgment, only. See Doc. #51 at 1. On November 6, 2020, within the time limit permitted by Federal Rule of Civil Procedure 12(a)(4)(A), EAV filed an Answer to the Complaint. See Doc. #54; see also Fed. R. Civ. P. 12(a)(4)(A) ("[I]f the court denies the motion or postpones its

disposition until trial, the responsive pleading must be served within 14 days after notice of the court's action[.]"). In its Answer, EAV asserted six counterclaims against Sage, and joined Sage Door and Calafiore as third-party defendants in four of those counterclaims. See Doc. #54 at 57-65. The counterclaims asserted are as follows: (1) Breach of Contract against Sage; (2) Breach of Implied Covenant of Good Faith and Fair Dealing against Sage; (3) Fraudulent Misrepresentation/Fraud in the Inducement against Calafiore, Sage Door, and Sage; (4) Negligent Misrepresentation against Calafiore, Sage Door, and Sage; (5) Innocent Misrepresentation against Calafiore, Sage Door, and Sage; and (6) Violations of CUTPA against Calafiore, Sage Door, and Sage. See id.

On November 12, 2020, Sage filed a "Motion to Strike Defendant's Joinder of Counterclaim Defendants Richard Calafiore and the Sage Door, LLC[.]" Doc. #65 at 1. On April 2, 2021, while the motion to strike joinder (Doc. #65) was pending, Sage filed a "Motion to Dismiss Counterclaim Three and Counterclaim Six in Part[,]" Doc. #93 at 1, and a "Motion to Strike Defendant's Fourteenth and Twentieth Affirmative Defenses[.]" Doc. #95 at 1. On September 28, 2021, Judge Bolden entered the following Order:

> Order. In light of the close of discovery, and consistent with the Court's "inherent authority to manage [its] dockets and courtrooms with a view toward

the efficient and expedient resolution of cases," <u>Dietz v. Bouldin</u>, 136 S. Ct. 1885, 1892 (2016), the pending motion to dismiss counterclaim, ECF No. 93, and the pending motion to strike Defendant's Fourteenth and Twentieth Affirmative Defenses, ECF No. 95, shall be **DENIED**. The substance of both motions can be addressed in any dispositive motion currently scheduled to be filed by **October 15, 2021**. As a result of this ruling, the motion to amend/correct counterclaims in the event the Court grants any portion of Plaintiff's motion to dismiss, ECF No. 109, shall be **DENIED** as moot.

Furthermore, in light of this ruling, the Court <u>sua sponte</u> extends the deadline for filing summary judgment motions to **October 22, 2021**[.]

Doc. #129. On that same date, Judge Bolden entered a second Order: "ORDER denying 65 Motion to Strike as moot. In light of the Court's most recent order, ECF No. 129, the motion to strike is denied as moot." Doc. #130.

On October 1, 2021, Sage filed a "Motion for Reconsideration and/or Clarification of the Court's Order Denying Plaintiff's Motion to Strike Joinder[.]" Doc. #131 at 1. Sage asserted that "the rulings in ECF No. 129 did not and could not render moot the motion to strike joinder." Doc. #131-1 at 5. "[I]n the alternative to granting Sage's Motion for Reconsideration," Sage requested that "the Court ... clarify the effect of the Mootness Order and the schedule to which the new parties will be bound." <u>Id.</u> at 7. On October 4, 2021, Judge Bolden granted Sage's Motion for Clarification: "ORDER granting 131 Motion for Clarification. The Court's September 28, 2021 Order, ECF No. 129, is intended to permit Sage Fulfillment the

4

opportunity to renew its motion to strike joinder as part of any motion for summary judgment[.]" Doc. #132.

On October 15, 2021, this matter was transferred to the undersigned "for all further proceedings." Doc. #138.

On October 22, 2021, Sage and EAV timely filed cross summary judgment motions. See Docs. #143, #147. On that same date, Sage filed a renewed Motion to Strike Joinder of the Putative Counterclaim-Defendants. See Doc. #145. On November 12, 2021, EAV filed a response to Sage's renewed Motion to Strike Joinder, see Doc. #156, and on November 26, 2021, Sage filed a reply. See Doc. #163.

## II. FACTUAL BACKGROUND

The following facts are derived from EAV's Counterclaims, see generally Doc. #54 at 29-66, and are accepted as true solely for the purposes of this motion. See Romano v. Levitt, No. 15CV00518(HBS), 2017 WL 193502, at *2 (W.D.N.Y. Jan. 18, 2017) ("This joinder decision is within the discretion of this Court," and "[l]ike a motion to dismiss, the factual assertions made ... must be accepted as true[.]" (citing Viada v. Osaka Health Spa, Inc., 235 F.R.D. 55, 61 (S.D.N.Y. 2006)).

"This case involves a breach of contract dispute related to the manufacturing and sale of two cannabinoid ('CBD') oil products designed specifically for pets, a 10 mg pen applicator and a 2 mg pen applicator[]" that would disburse a CBD gel for

transdermal use in pets. Doc. #54 at 29. "EAV is a corporation" that "is in the business of marketing, selling and distributing pet foods, treats, supplements and holistic remedies." Id. at 32-33. "Sage is a limited liability company" that "was recently formed in 2018[,]" and whose "sole member is Sage Door." Id. at 33. "Sage Door is a limited liability company" with "two members, Calafiore and John Thornton[.]" Id.

"In early 2018, EAV and Sage Door, Sage's parent company, began discussing a potential business relationship whereby Sage would manufacture and sell to EAV CBD oil products designed specifically for use on pets, including pens, tabs and potions ('collectively, the CBD Animal Products')." Id. "As Sage and its members had no prior experience with manufacturing products for pets and EAV had no prior experience selling products with CBD oil, the parties relied upon each other's purported respective knowledge, experience and expertise to launch a new product in a nascent market." Id. at 33-34. "In or around June 2018, Sage Door proposed to manufacture and deliver a product that was comprised of a metered applicator pen (the 'Pen') preloaded with Sage's own proprietary blend of CBD oil and other ingredients (the 'Gel') (collectively, the 'Zen Pen')." Id. at 34.

"In or around September and October of 2018, EAV and Sage began to negotiate the terms of a master supply agreement that would govern the purchase and sale of the CBD Animal Products."

Id. at 36. "In order to induce EAV to enter into a contractual agreement with Sage, Sage's principal and managing member, Calafiore, on behalf of Sage and/or Sage Door, made several misrepresentations to EAV which he either knew to be false or misleading at the time or could not verify or substantiate." Id. Specifically, Calafiore made five "misrepresentations designed to induce EAV to enter into the contract." Id.

"First, in or around September 2018, Calafiore represented to EAV that Sage needed an advance of $250,000 prior to or contemporaneous with the signing of the contract[.]" Id. "In express reliance upon Calafiore's representation, EAV agreed to provide Sage with the Advance Payment[,]" which "EAV specifically conditioned" on "Sage using the proceeds for the stated need of securing biomass." Id. "In return, Sage agreed" to use the funds for the stated need and to "provide a credit to EAV against future purchases ... in the amount of the Advance Payment, plus interest." Id. "Sage never provided any such credit to EAV" and "refused to return the Advance Payment[.]" Id. at 37.

> Second, between August and October of 2018, Calafiore repeatedly represented that the Pen Sage sourced from the third-party manufacturer for use in the CBD Animal Products was only a temporary stop-gap solution and Sage would design, develop and/or procure an improved, fully-customized Pen for EAV's intended usage within six (6) months after the signing of the contract.

Id. "Calafiore and Sage never designed, developed, or procured a customized Pen" or "made any meaningful effort ... to secure a customized pen[,]" or had any intention of doing so. Id.

> Third, Calafiore, on behalf of Sage and Sage Door, represented that Sage ... was an experienced, well-financed and capitalized producer of CBD oil products for human use which wanted to expand into CBD pet products and that Sage would bring its full experience, expertise, staff, and resources to support EAV's proposed product line.

Id. at 38. In reality, "the newly created company was under-funded, under-staffed and therefore lacked the capital and resources to fully and/or timely meet the demands of the EAV contract" and "was solely reliant on payments from EAV to cover its capital needs, purchase the Pens, and procure suppliers of the Gel." Id.

"Fourth, Calafiore, on behalf of Sage and Sage Door, pushed EAV to include very aggressive, artificially-high minimum purchase requirements in the EAV contract as an accommodation to Sage[.]" Id. "Fifth, Calafiore assured EAV that Sage's prices to EAV would be favorably below market prices for both the Pens and CBD oils, in consideration for the exclusivity conferred on Sage[,]" but "Calafiore and Sage did not intend to charge EAV prices that reflected discounts below the going market rate for either the Pens or the Gel[.]" Id. at 39.

"In late 2018, EAV and Sage entered into a contract to purchase and sell the CBD Animal Products. The contractual

relationship was governed by a Master Exclusive Supply Agreement (the 'MESA') and an initial Statement of Work No. 1 (the 'SOW 1') (collectively, the 'Agreement')." Id. "After the parties executed the MESA, and around the time the parties were executing the SOW 1, Sage was still scrambling to come up with a formulation of the Gel that would work consistently in the Pen." Id. at 42. "Sage never brought any of" the issues with the Gel "to EAV's attention[.]" Id. at 44.

> Instead, well-aware in December of 2018 that (1) the formulation of the Gel was still being altered post-contract, (2) the Gel could change viscosity at different temperatures which would impact their ability to dispense property, and (3) the Pens tended to jam, clog, or otherwise fail to properly dispense the Gel, Sage failed to inform EAV of these facts and instead shipped thousands of knowingly defective units of product to EAV.

Id.

"EAV began placing orders for the first and second quarters of 2019[,]" which Sage "struggled to timely deliver[.]" Id. EAV further "discovered that Sage had not conducted any shelf-life stability testing to substantiate" the expiration date, despite knowing that it needed to do so, as evidenced by an "email to Calafiore[]" from Steven Kushner, the developer of the technology used in the Gel. Id. at 46. The parties agreed to "suspend purchase orders for the remainder of 2019[]" because of concerns with the expiration date. Id. at 48. "EAV's CEO emailed Mr. Calafiore and others at Sage, documenting the parties'

agreement to suspend purchase orders for the remainder of 2019."
Id. EAV incurred substantial additional expenses to relabel the
products "with new expiration dates." Id. at 49.

> On November 13, 2019, ... Sage informed EAV in writing
> that it was in "material breach" of the Agreement
> because it supposedly had failed to purchase the minimum
> number of units during each of the first three quarters
> of 2019 and purportedly indicated an intention not to
> purchase the minimum number of units during the
> remainder of the Agreement's term. Indeed, this claim
> was directly contradicted by Mr. Calafiore's own
> statement in September 2019[.]

Id. at 54.

"After repeated efforts by EAV to cooperate and work with
Sage in good faith to resolve the various labelling and product
quality issues with Sage, on December 6, 2019, EAV issued a
written notice of material breach outlining Sage's various
breaches under the Agreement." Id. at 55. "As a result of Sage's
numerous breaches and its failure to cure, on March 11, 2020,
EAV formally terminated the Agreement with Sage by way of a
written letter." Id. at 56.

**III. DISCUSSION**

Sage asserts that EAV's joinder of Calafiore and Sage Door
as counterclaim-defendants was "improper and untimely" because
"[t]he Federal Rules provided a means for EAV to seek untimely
to join new parties when it filed its Answer -- seek leave and
show good cause[,]" but EAV "ignored those rules[.]" Doc. #145

at 1. Sage argues that, as a result, EAV's joinder of Calafiore and Sage Door should be stricken. See id. EAV responds that

> joinder should be allowed in this instance so that
> complete relief may be granted at trial, particularly
> given that (1) EAV sought to add Sage Door and Mr.
> Calafiore at the earliest opportunity it had to do so
> -- when it filed its initial pleading, (2) discovery
> was only just beginning at that point, and (3) Sage has
> not suffered and will not suffer any undue prejudice
> from such joinder.

Doc. #156 at 5.

## A.  Rule 20 Joinder

As a threshold matter, the Court must determine whether joinder of Calafiore and Sage Door is permissible pursuant to the Federal Rules of Civil Procedure applicable to joinder generally. "Rules 19 and 20 govern the addition of a person as a party to a counterclaim or crossclaim." Fed. R. Civ. P. 13(h). EAV asserts that joinder of Calafiore and Sage Door is proper pursuant to Rule 20. See Doc. #156 at 14-16. Sage does not dispute this assertion. See Doc. #145-1 at 8; see generally Doc. #163.

> Rule 20 states, in relevant part:

> **(2) Defendants**. Persons ... may be joined in one action
> as defendants if:
>> **(A)** any right to relief is asserted against them
>> jointly, severally, or in the alternative with
>> respect to or arising out of the same transaction,
>> occurrence, or series of transactions or
>> occurrences; and
>> **(B)** any question of law or fact common to all
>> defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). "The purpose of Rule 20 is to promote trial convenience and to expedite the resolution of disputes, thereby preventing multiple lawsuits." Deskovic v. City of Peekskill, 673 F. Supp. 2d 154, 159 (S.D.N.Y. 2009) (citation and quotation marks omitted). EAV asserts that Calafiore and Sage Door are properly joined under Rule 20 because "all the fraud and misrepresentation claims arise out of a single transaction -- the negotiation and entering into the Master Exclusive Supply Agreement ... and an initial Statement of Work No. 1[.]" Doc. #156 at 14. The Court agrees.

"Permissive joinder rests with the sound discretion of the Court, which must determine if joinder will comport with the principles of fundamental fairness." Shaw v. Munford, 526 F. Supp. 1209, 1213 (S.D.N.Y. 1981) (citation and quotation marks omitted). "Permissive joinder is liberally construed to serve the interests of fairness and judicial economy, although both requirements of Rule 20(a) must be met." Graham v. BMO Harris Bank, N.A., No. 3:13CV01460(WWE), 2014 WL 12748028, at *1 (D. Conn. May 13, 2014). "Courts should look to the logical relationship between the claims and determine whether the essential facts of the claims are so connected that all issues should be resolved in one lawsuit." Id. (citing Barnhart v. Town of Parma, 252 F.R.D. 156, 159 (W.D.N.Y. 2008)).

Here, all counterclaims relate to the negotiation, execution, and performance of the MESA and SOW 1, thereby arising out of the same series of transactions or occurrences. See Esposito v. Ocean Harbor Cas. Ins. Co., No. 13CV07073(SJF)(AKT), 2013 WL 6835194, at *4 (E.D.N.Y. Dec. 19, 2013) ("In order for a plaintiff's right to relief to relate to, or arise out of, a transaction or occurrence for purposes of Rule 20(a), the 'transaction' or 'occurrence' must relate to the contract purportedly breached by defendant[.]"). EAV's allegations show that the claims and parties are closely intertwined; Calafiore is alleged to have routinely acted on behalf of Sage and Sage Door. See generally Doc. #54 at 33-65. Sage was not founded until after the negotiation of the contract began, see id. at 38, so EAV was necessarily negotiating with Sage Door prior to entering into the MESA with Sage. Accordingly, the Court finds that EAV's counterclaims against Calafiore and Sage Door arise out of the same series of transactions and occurrences as the counterclaims asserted against Sage.

Similarly, the counterclaims plainly present a "question of law or fact common to all defendants[.]" Fed. R. Civ. P. 20(a)(2)(B). Because all claims that EAV asserts against Calafiore and Sage Door are also asserted against Sage, there can be no doubt that there is a "question of law" common to all

13

three counterclaim-defendants. Taken as a whole, there is no question that the counterclaims asserted against Sage and the facts giving rise to them bear a logical relationship to the counterclaims against Calafiore and Sage Door. Accordingly, the Court finds that permissive joinder of Calafiore and The Sage Door as counterclaim-defendants is proper under Rule 20.

**B.    Good Cause to Extend Scheduling Order Deadlines**

Generally, a counterclaim-plaintiff is not required to obtain leave of court to join new parties in the original answer, pursuant to Rule 13(h). See Vermont Castings, Inc. v. Evans Prod. Co., Grossman's Div., 510 F. Supp. 940, 946 (D. Vt. 1981) ("[L]eave of court is no longer required[]" to join parties pursuant to Rule 13(h). "The spirit of the Federal Rules is served by eliminating unnecessary motions. Any abuse of the joinder provisions can be remedied upon motion under Rule 21 which provides that parties may be dropped by order of the court on such terms as are just."). If joinder is proper under Rule 20, "a court may then, under Rule 21, allow joinder at any time, on just terms[,]" and should do so "freely ... when justice so requires." City of Almaty v. Ablyazov, 278 F. Supp. 3d 776, 789 (S.D.N.Y. 2017) (citation and quotation marks omitted). However, where the Court has entered a Scheduling Order setting a deadline for joinder of new parties, the deadline set in the Scheduling Order controls. See id. ("[W]hen a motion

14

for joinder is made after a deadline to join parties in

a scheduling order has elapsed, it is subject to the heightened

standard for untimely amendments set forth in Rule 16(b), which

requires a showing of good cause." (citation and quotation marks

omitted)).

Here, EAV joined Calafiore and Sage Door in its original

Answer to the Complaint, see Doc. #54, which would not require

leave of court absent a separate deadline for the joining of new

parties. However, it is also true that EAV filed its Answer on

November 6, 2020, well after the July 17, 2020, deadline set by

the Court for defendant to join parties. See Doc. #22. Because

EAV failed to meet the deadline set by the Court, leave of court

is required for EAV to join Calafiore and Sage Door as parties

to this action. See Garmin Ltd. v. Tomtom, Inc., No.

2:06CV00338(LED), 2007 WL 2903843, at *6 (E.D. Tex. Oct. 3,

2007) ("Although TomTom timely filed its Amended Answer and

Counterclaims pursuant to the Scheduling Order, the deadline for

joining new parties was two months prior; therefore, TomTom must

show good cause.").

EAV did not seek leave of court to join Calafiore and Sage

Door as counterclaim-defendants to this action prior to doing

so. However, the Court need not determine the impact of EAV's

technical failure, because it was cured when EAV formally sought

leave to join Calafiore and Sage Door in its response to Sage's

15

original motion to strike joinder. See Doc. #91 at 13 ("In the event the Court agrees with Sage that the joinder of Calafiore and Sage Door was untimely, EAV respectfully requests leave to allow EAV to amend its Answer and Counterclaims to join Calafiore and Sage Door."). The Court declines to prevent the otherwise proper joinder of these parties solely due to a technical failure. Accordingly, the Court will determine whether good cause exists to permit EAV's untimely joinder of Calafiore and Sage Door pursuant to Rule 16(b)(4).

Rule 16(b)(4) permits modification of a Scheduling Order "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). When determining whether good cause exists, the Court considers the diligence of the moving party, and any prejudice to the non-moving party. See Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000) ("[A] finding of 'good cause' depends on the diligence of the moving party."); Kassner v. 2nd Ave. Delicatessen Inc., 496 F.3d 229, 244 (2d Cir. 2007) (Diligence "is not, however, the only consideration. The district court, in the exercise of its discretion under Rule 16(b), also may consider other relevant factors including, in particular, whether allowing the amendment of the pleading at this stage of the litigation will prejudice defendants.").

1.   Diligence

"In order to demonstrate good cause, a movant must demonstrate that he has been diligent, meaning that despite his having exercised diligence, the applicable deadline could not have been reasonably met." Salomon v. Adderley Indus., Inc., 960 F. Supp. 2d 502, 507 (S.D.N.Y. 2013). EAV asserts: "Despite exercising reasonable diligence, [it] could not have met the July 17, 2020 deadline to join parties because (1) additional parties can only be joined to an existing counterclaim or one being asserted simultaneously with the addition of a nonparty and (2) the factual basis for such joinder was only discovered after the deadline." Doc. #156 at 7. Sage responds that EAV "nowhere ... explains why it did not promptly alert the Court and Sage in August, 2020 of" its intent to join Calafiore and Sage Door, Doc. #163 at 4 n.5, and that "EAV's story that it first learned of its claims against Califiore and Sage Door only during discovery in August/September 2020 is just not true." Id. at 5.

"Under Rule 13(h), parties may be properly joined as counterclaim defendants only where at least one party against whom a counterclaim/third-party claim is asserted was a party to the original action." Republic Nat. Bank v. Hales, 75 F. Supp. 2d 300, 310 n.8 (S.D.N.Y. 1999), aff'd sub nom. HSBC Bank USA v. Hales, 4 F. App'x 15 (2d Cir. 2001) (citation and quotation

marks omitted). "It was reasonable for [EAV] to await the outcome of its motion to dismiss before asserting any counterclaims against [Sage] or any other party in this Court." NovaFund Advisors, LLC v. Capitala Grp., LLC, No. 3:18CV01023(MPS), 2020 WL 230089, at *15 (D. Conn. Jan. 14, 2020). EAV could not have joined Calafiore and Sage Door to the counterclaims against Sage until those counterclaims were asserted. Thus, joinder of Calafiore and Sage Door was not possible until EAV filed its original Answer with its counterclaims asserted against Sage.[2] Accordingly, because the

---

[2] The Scheduling Order deadlines set by the Court serve an important purpose and cannot be disregarded. See Parker, 204 F.3d at 339-40 ("By limiting the time for amendments, the rule is designed to offer a measure of certainty in pretrial proceedings, ensuring that at some point both the parties and the pleadings will be fixed." (citation and quotation marks omitted)). EAV was well aware of the deadline set by the Court for joining additional parties, and even played a role in setting that deadline through the filing of the parties' 26(f) report. Compare Doc. #22 (Scheduling Order setting deadline of July 17, 2020, for defendant to join additional parties), with Doc. #20 at 5 (Rule 26(f) report seeking a deadline of July 15, 2020, for defendant to join additional parties). EAV should have sought an extension of that deadline in full compliance with the Federal and Local Rules prior to the expiration of the deadline. See D. Conn. L. Civ. R. 7(b)(3) ("All motions for extension of time shall be filed at least three (3) business days before the deadline sought to be extended, except in cases in which compelling circumstances warranting an extension arise during the three days before the deadline."). To the extent that EAV did not learn until after the deadline that joinder of Calafiore and Sage Door would be proper, EAV should have filed a motion to extend the deadline "set[ting] forth reasons why the motion was not filed at least three business days before the deadline in question." Id. While this technical failure is not dispositive,

joinder of additional parties to EAV's counterclaims was not permitted by the Federal Rules of Civil Procedure until the filing of its original Answer, the Court finds that EAV reasonably believed it was acting with diligence by joining Calafiore and Sage Door in its original Answer. See Bensinger v. Denbury Res. Inc., No. 10CV01917(JG), 2013 WL 3353975, at *3 (E.D.N.Y. July 3, 2013) (finding "that plaintiff has established good cause for failing to comply with this Court's scheduling order[]" where "a reasonably diligent attorney could have misunderstood the scheduling order[]").

EAV further asserts that it "did not learn that viable claims existed against any party other than Sage until after Sage responded to discovery during September of 2020." Doc. #156 at 7. It is evident that EAV knew of the existence of Calafiore and Sage Door, and at least to some degree, the organizational structure of the Sage entities, before November 2020. See Doc. #19-4 at 2-3 (letter from Richard Calafiore on Sage Door Holdings letterhead attached as an exhibit to EAV's motion to dismiss filed on May 15, 2020). However, EAV maintains that it "did not have an adequate basis to believe that viable claims existed against any party other than Sage." Doc. #156 at 10.

---

the Court cautions the parties against noncompliance with Court-imposed deadlines.

Although Sage outlines discrepancies that it contends show that EAV knew it had viable claims against Calafiore and Sage Door, see Doc. #163 at 7, the Court does not find this argument persuasive. While it may be true that EAV knew that there were potential claims against Calafiore and Sage Door, it is not readily apparent to the Court that EAV knew it had viable claims against Calafiore and Sage Door. Thus, the Court accepts the representations of EAV's counsel, as officers of the Court, that EAV did not have an adequate basis to assert viable claims against Calafiore and Sage Door by the July 17, 2020, deadline for joining parties.

Accordingly, considering EAV's attempt to ensure compliance with Rule 13(h) and counsel's representations that it did not learn of viable claims against Calafiore and Sage Door until after the deadline to join new parties, the Court finds that EAV acted with diligence in joining Calafiore and Sage Door as counterclaim-defendants.

2.   Prejudice

In addition to diligence, a court considering a modification to a scheduling order also considers the prejudice to the opposing party. See Kassner, 496 F.3d at 244. "Undue prejudice to the opposing party is typically the most important consideration in evaluating a motion to amend a pleading. Relevant factors include whether a party's opponent would be

required to expend significant additional resources to conduct discovery and prepare for trial and whether the amendment will significantly delay resolution of the dispute." Lacher v. Comm'r, 32 F. App'x 600, 603 (2d Cir. 2002) (citations omitted).

As to the resources that would be expended to conduct additional discovery, prejudice is not significant where, as here, "it is not clear that any new discovery beyond the scope of that already underway would be required." Hybrid Athletics, LLC v. Hylete, LLC, No. 3:17CV01767(VAB), 2019 WL 4143035, at *10 (D. Conn. Aug. 30, 2019), reconsideration denied sub nom. Hybrid Athletics, LLC v. Hylete, Inc., 2019 WL 4957921 (D. Conn. Oct. 8, 2019). Sage "will not have to expend significant additional resources because the same" counterclaims "are being alleged against the new parties and further (limited) discovery itself is not an adequate ground to deny" joinder. Salomon, 960 F. Supp. 2d at 508.

In its renewed motion to strike joinder, dated October 22, 2021, Sage asserts:

> Although it has no burden to establish prejudice, Sage notes that joinder at this time is highly prejudicial. Discovery is closed, dispositive motions are due today, and this case is set to seat a jury in a little over four months. Moreover, adding these new parties would raise a spate of additional legal issues, including, among others, issues regarding personal jurisdiction and concerning the viability and adequacy of EAV's claims against these parties.

21

Doc. #145-1 at 14 (footnote omitted). However, "Courts also consider whether the opponent was otherwise on notice of the new claim, and whether the claim derives from the same facts set forth in the original pleading." Lacher, 32 F. App'x at 603. Sage has been on notice of the counterclaims against Calafiore and Sage Door since November 6, 2020, when EAV filed its Answer. See Doc. #54. Further, as discussed above, the counterclaims against Calafiore and Sage Door derive from the same facts as the claims against Sage. At the time Sage was put on notice of EAV's intent to join Calafiore and Sage Door, nearly eight months remained until the close of discovery. See Doc. #22.

Sage asserts that "[i]f EAV wants to sue the Putative Counterclaim-defendants, it should do so elsewhere and in another action." Doc. #145-1 at 15. This is not a tenable solution where, as here, the claims are so logically connected that the interests of judicial efficiency would not be served by litigating these claims separately. "'[T]here is little to be gained from encouraging the piecemeal litigation that might result if [EAV] were forced to raise its counterclaim'" separately.[3] John v. Arians Co., No. 3:19CV01378(VAB), 2021 WL

---

[3] Although the Court's focus is on the prejudice to Sage, not EAV, the Court notes that denying joinder of Calafiore and Sage Door would be highly prejudicial to EAV. If joinder of Calafiore and Sage Door were not permitted, EAV would be forced to file a separate action, asserting identical claims based on identical facts, nearly a year and a half after it sought to join

753448, at *7 (D. Conn. Feb. 26, 2021) (quoting Coale v. Metro-North Railroad Co., No. 3:08CV01307(CSH), 2009 WL 4881077, at *3 (D. Conn. Dec. 11, 2009)).

Thus, in light of the significant overlap of these claims, and the fact that Sage was on notice of EAV's intention to join Calafiore and Sage Door early in the process of discovery, the Court finds that joinder of Calafiore and Sage Door would not be unduly prejudicial. The Court acknowledges the frustrations that come with the delays in this litigation. However, joinder of these parties serves the prevailing interests of fairness and judicial economy. Notably, the delay caused by EAV was less than four months. "Mere delay, ... absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right" join parties. Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (citation and quotation marks omitted).

The Court finds that EAV acted with reasonable diligence and that joinder of Calafiore and Sage Door would not be unduly prejudicial to Sage. The Court thus finds that Richard Calafiore and The Sage Door, LLC, have been properly joined as

---

Calafiore and Sage Door as parties to this action, and over three years after the events giving rise to this litigation took place. The balance of equities tips heavily in favor of permitting joinder of Calafiore and Sage Door as counterclaim-defendants.

counterclaim-defendants under Federal Rule of Civil Procedure 20, and good cause exists pursuant to Rule 16(b)(4) to permit this joinder after the deadline established in the Court's Scheduling Order.

## IV.  CONCLUSION

For the reasons set forth herein, plaintiff's renewed motion to strike joinder **[Doc. #145]** is **DENIED.**

Counterclaim-defendants Richard Calafiore and The Sage Door, LLC shall file their responses to the counterclaims against them by **April 22, 2022.** The Court encourages the parties to meet and confer and file a motion for any relief related to the Scheduling Order necessitated by this ruling by **April 15, 2022.**

It is so ordered at New Haven, Connecticut, this 1st day of April, 2022.

/s/
_____
HON. SARAH A. L. MERRIAM
UNITED STATES DISTRICT JUDGE
